

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-20-00067-CR |
| EX PARTE: | § | Appeal from the |
| RONALD WAYNE THOMPSON, | § | 210th District Court |
| Appellant. | § | of El Paso County, Texas |
| | § | (TC# 20080D000241-210-01) |

**O P I N I O N**

In January 2008, a grand jury indicted Appellant, Ronald Wayne Thompson, for the capital murder of Haley Chan during the course of a robbery. In 2010, he pleaded guilty to the lesser-included offense of murder, and the trial court assessed a negotiated sentence of 40 years' imprisonment. This appeal addresses the trial court's denial of Appellant's June 2019 motion requesting post-conviction DNA testing. He argues that the trial court improperly denied the motion, and next that Texas Code of Criminal Procedure Chapter 64 is unconstitutional as applied to his case. We affirm.

# I. BACKGROUND

At a 2010 plea hearing, Appellant told the trial court that he freely and voluntarily pleaded guilty to murdering Chan because he was guilty, and for no other reason. Appellant believed that both of his attorneys represented him effectively, and he was happy with their performance. Appellant understood the terms of his negotiated sentence and pleaded true to the two punishment enhancements alleged in the indictment. Both the trial court and counsel declared that, based upon observations and interactions, they deemed Appellant competent to enter his plea.

The State announced that, if the case would have proceeded to trial, it would have proven beyond a reasonable doubt that Appellant intentionally killed Chan in 2007 by striking her in the head with a board. Appellant did not object to this summary, and the trial court found the board to be a deadly weapon.

Appellant did not file a direct appeal. In a state court application for writ of habeas corpus, however, Appellant alleged that he received ineffective assistance of trial counsel because his attorneys (1) advised him that he would be given the death penalty if he did not plead guilty, and (2) counsel did not request a competency hearing before his plea hearing. The Court of Criminal Appeals denied Appellant's first application for writ of habeas corpus in 2017, and dismissed a subsequent application for writ of habeas corpus.

## A. Chapter 64 Motion for Post-Conviction DNA Testing

On June 10, 2019, Appellant filed in the trial court a motion for post-conviction DNA testing of the following evidence: (1) a wood board; (2) a 1995 Pontiac Bonneville described as Chan's car; (3) a cellular phone; (4) a desktop computer; and (5) a printer. Appellant requested DNA testing of evidence that contained biological material that had not previously been tested,

2

and evidence that was tested previously but could be subjected to newer techniques. He did not delineate which items fell into which category.

In an attached affidavit, Appellant explained that the State's theory of the case was that he murdered Chan using a wood board, and then stole Chan's Pontiac, desktop computer, printer, X Box video game console, and cellular phone. He maintained that he suffered from mental illness and intellectual disability while in custody awaiting trial, and that his attorneys told him if he did not plead guilty he would receive the death penalty. Appellant declared that testing these items, "if it returns any usable DNA, will show that none of [his] DNA is on the evidence," and prove his innocence.

## B. The State's Response

In compliance with Code of Criminal Procedure Article 64.02, the State responded that it conducted a search to determine if it possessed the items Appellant requested to be tested.[1] The Deputy Chief Investigator for the District Attorney, Jeff Dove, averred that the wood board, which remained in police custody, had already been tested for DNA and returned a match with only blood from Chan. Law enforcement released the Pontiac to the lienholder in 2011; however, the police department retained the brake and gas pedals, a shirt found inside the car, and swabs of portions of the vehicle. The State did not know if the swabs and brake and gas pedals contained testable biological material. The State knew that the shirt recovered from the Pontiac belonged to Dante Francois Taylor, but did not know if the shirt contained biological material suitable for DNA testing. Law enforcement also maintained custody of two cellular phones, neither of which had any readily observable biological material suitable for DNA testing. Law enforcement did not

---

[1] Article 64.02 instructs the trial court to provide the State with a copy of the motion for DNA testing, and requires the State to either (a) deliver the evidence to the court, along with a description of the condition of the evidence, or (b) explain in writing why the State cannot deliver the evidence to the court. TEX.CODE CRIM.PROC.ANN. art. 64.02(a).

3

have a desktop personal computer or printer in its possession. The State attached a report summarizing the results of the DNA testing of the wood board.

In a separate pleading, the State further responded that Appellant did not demonstrate that he was entitled to DNA testing under article 64.03. The State argued that the only testable items outside of the wood board in police custody were the cellular phones, and Appellant presented no evidence that they contained biological material suitable for testing. The State also argued that Appellant did not establish, by a preponderance of the evidence, that he would not have been convicted if DNA testing provided exculpatory results, because two pieces of evidence strongly established his guilt. First, witness Robert Castillo, the last person to see Chan alive in her apartment, swore that Appellant announced a plan to steal Chan's computer to make money. In addition, the State attached a report summarizing DNA testing of pieces of duct tape found in Chan's apartment and tape that bound Chan's body, indicating that Appellant could not be excluded as a contributor to the DNA found on the evidence. Finally, the State maintained that Appellant did not establish that additional DNA testing of the wood board would yield more accurate and probative results than the testing previously performed.

### 1. Witness statements

The State attached two witness statements provided to law enforcement. Dante Francois Taylor stated that he met Chan in a bar in 2006 and the two became friends. Taylor left a work shirt and lunch box in Chan's car when he was arrested. He lost communication with Chan while he was incarcerated for three months, and never retrieved the items or heard from Chan after he was released.

The second witness, Robert Castillo, identified an African-American male from a police photo lineup, who approached him at a bar parking lot selling used stereo equipment. Castillo

4

drove the man to an apartment, and the man used Castillo's cellular phone to call "Haley," the woman who had taken him in. Castillo answered when Haley returned the call on his phone, and a Caucasian woman who introduced herself as Haley subsequently arrived in a Pontiac sedan. After Castillo looked at the stereo equipment and exited the apartment, the man told Castillo that he would take half of the price in cash up-front for the goods. The man also complained to Castillo about staying in Haley's apartment and the conditions she placed on him. The man divulged that he planned to "jack" Haley's computer to make some money.

### 2. DNA testing of duct tape

The State also provided a summary of the results of DNA testing of several pieces of duct tape.[2] The DNA profile from several loci of samples of duct tape was consistent with a mixture. Appellant could not be excluded as a contributor to the stain at certain loci, and the probability of selecting an unrelated person at random who could be a contributor to the stain was approximately 1 in 5,780 for Blacks. Chan could also not be excluded as a contributor to the stain at various loci, and the probability of selecting an unrelated person at random who could be a contributor to the stain was approximately 1 in 131.4 trillion for Caucasians.[3]

The partial DNA profile from the stain on a sample of duct tape recovered from Chan's ankle was consistent with a mixture. Appellant could not be excluded as a contributor to the stain at several loci, with the probability of selecting an unrelated person at random who could be a contributor to the stain at approximately 1 in 1,044 for Blacks. The DNA profile from blood on a third sample of duct tape, also recovered from Chan's ankle, was consistent with a mixture of at least three individuals. Appellant could not be excluded as a contributor to the stain at several loci,

---

[2] Chan's body was found with duct tape wrapped around her eyes and nose, as well as her ankles.

[3] The Chief Medical Examiner's post-mortem examination indicated that Chan was Caucasian.

with the probability of selecting an unrelated person at random who could be a contributor approximately 1 in 243,400 Caucasians.

## C. The Trial Court's Order Denying Appellant's Motion

On February 10, 2020, the trial court entered an order denying Appellant's motion for post-conviction DNA testing.  In reaching its decision, the court found the following relevant facts:

1. This Court finds that the only available DNA untested evidence in applicant's request for testing is two cell phones.

2. This Court finds that the applicant has failed to demonstrate that the cell phones sought to be tested have a reasonable likelihood of containing biological material.

3. This Court finds, based on the record, that the applicant has failed to establish, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing of the cell phones.

4. This Court finds that Thompson has failed in his burden to show, concerning the wood plank that was previously subjected to DNA testing, that any newer testing techniques are available that would provide a reasonable likelihood of results that would be more accurate and probative than what has already occurred.

5. This Court finds that the applicant has failed his burden of satisfying the requirements of TEX. CRIM. PROC. CODE art. 64.03(a)(2).

### Conclusions of Law

1. Based on this Court's findings, the applicant has failed to satisfy his burden of showing his entitlement to post-conviction DNA testing under Chapter 64 of the Code of Criminal Procedure.

## D. Appellant's Late-Filed Reply

On February 18, 2020, eight days after the trial court had denied the motion, Appellant delivered a reply to the State's response to his motion for DNA testing.[4]  Appellant argued that the

---

[4] The clerk filed Appellant's reply on February 24, 2020.

State's response provided new evidence about his case when it stated that law enforcement swabbed the Pontiac and removed the brake and gas pedals and a shirt from the vehicle. He requested that the following evidence be tested: (1) all swabs law enforcement obtained from the house and Pontiac; (2) the shirt that law enforcement removed from the car; (3) duct tape that bound Chan when she was murdered, which contained Appellant's DNA and two additional contributors; (4) the wood board; (5) two cellular phones; (6) a 1995 Pontiac; (7) a desktop computer; and (8) a printer. Appellant indicated that the State's theory was that the offender bound Chan with duct tape, murdered her, and then robbed her of her 1995 Pontiac, two cellular phones, and desktop computer and printer. Appellant contended that the State could not prove he robbed or murdered Chan because his DNA would not be found in the Pontiac or on the two cellular phones that the State claims he stole from Chan's home.

Appellant also indicated in the reply that he agreed with Castillo's statement. Appellant took Castillo to Chan's residence, where Appellant was staying, and Chan was alive when Castillo left. Although Castillo heard Appellant announce a plan to steal Chan's computer, Castillo did not allege that Appellant stated he would murder or bind Chan with duct tape or rob Chan of her vehicle or cellular phone. Appellant acknowledged that his DNA profile would match the profile derived from samples taken from the crime scene, because he touched duct tape and other household items while staying with Chan. He claimed that the cellular phones law enforcement seized during his arrest were never in Chan's possession and would not contain her DNA. The trial court took no action on this pleading.

## II. NO ERROR IN DENYING CHAPTER 64 MOTION

Appellant first argues that the trial court improperly denied his motion for post-conviction DNA testing. Specifically, he contends that the State provided new evidence in its response, which

7

requires testing of (1) all swabs law enforcement obtained from the house and Pontiac; (2) the shirt law enforcement removed from the car; (3) duct tape that bound Chan when she was murdered; (4) the wood board; (5) two cellular phones; and (6) the gas and brake pedals from the Pontiac. Appellant maintains that he pleaded guilty because trial counsel told him he would otherwise receive the death penalty. He contends that his DNA was found on the duct tape because he stayed in Chan's home before her murder. He argues that additional testing of the wood board would reveal the true offender, because the perpetrator's DNA would be on the murder weapon.

The State responds that Appellant has not shown he is entitled to post-conviction DNA testing because he provided no evidence that there was a reasonable likelihood that any of the items contained biological material. He also did not demonstrate by a preponderance of the evidence that he would not have been convicted if DNA testing returned exculpatory results. Finally, the State maintains that Appellant did not establish that newer testing techniques would provide more accurate and more probative results than those already obtained from the wood board. We agree, and conclude that the issue does not warrant relief.

## A. Chapter 64 and the Standard of Review

"There is no free-standing due-process right to DNA testing, and the task of fashioning rules to 'harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice' belongs 'primarily to the legislature.'" *Ramirez v. State*, 621 S.W.3d 711, 717 (Tex.Crim.App. 2021), *quoting Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex.Crim.App. 2011). The Texas Legislature created a process for post-conviction DNA testing in the Code of Criminal Procedure Chapter 64. *See* TEX.CODE CRIM.PROC.ANN. arts. 64.01-64.03.

Article 64.01 delineates the requirements of a cognizable motion for post-conviction DNA testing. *See id.* art. 64.01. A "convicted person may submit to the convicting court a motion for

8

forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." *Id*. art. 64.01(a-1). The motion may only request testing of evidence that the State was in possession of at the time of trial, and was either (1) not previously tested for DNA or (2) "although previously subjected to DNA testing . . . can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test[.]" *Id*. art. 64.01(b)(1), (2)(A).

Article 64.03 sets out the findings a trial court must make in order to grant DNA testing, including that:

(1) The evidence "still exists and is in a condition making DNA testing possible;"

(2) The evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;"

(3) "[T]here is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

(4) "[I]dentity was or is an issue in the case[.]"

*Id*. art. 64.03(a)(1). Pursuant to article 64.03(a)(2)(A), the trial court must also find that the defendant establishes by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing[.]" *Id*. art. 64.03(a)(2)(A).

For the "identity" requirement, the convicting court is prohibited from finding against that element solely on the basis that the convicted person pleaded guilty, confessed, or admitted to the crime. *Id.* art. 64.03(b). Nonetheless, for the purposes of article 64.03(a)(2)(A), a court may properly consider a defendant's confession or guilty plea in determining whether a convicted person establishes that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See Ramirez*, 621 S.W.3d at 722 (instructing that a defendant's confession is properly considered in determining whether he met his burden under article 64.03(a)(2)(A)).

9

Post-trial factual developments, such as evidence presented in habeas applications about the veracity of confessions, are not properly considered in making an article 64.03(a)(2)(A) determination. *See id.* Instead, a court limits its review to "whether exculpatory results 'would alter the landscape if added to the mix of evidence that was available at the time of trial.'" *Id.* at 723, *quoting Holberg v. State*, 425 S.W.3d 282, 287 (Tex.Crim.App. 2014); *see Reed v. State*, 541 S.W.3d 759, 774 (Tex.Crim.App. 2017) (instructing that an accused must show by a greater than 50% likelihood that he would not have been convicted if the proposed testing's exculpatory results were available at the time of his trial).

A reviewing court gives almost total deference to the trial court's resolution of historical fact issues supported by the record and application-of-law-to-fact issues turning on witness credibility and demeanor. *See Ramirez*, 621 S.W.3d at 718. Application-of-law-to-fact questions are reviewed de novo. *See id.*; *Reed*, 541 S.W.3d at 768-69.

### B.  Items Addressed on Appeal

In his initial Chapter 64 motion, Appellant requested post-conviction DNA testing of:  (1) a wood board; (2) a 1995 Pontiac; (3) a cellular phone; (4) a personal computer; and (5) a printer. The State's Chapter 64.02 response concerning the availability and condition of items for DNA testing, including exhibits and Dove's affidavit, addressed these items.  Appellant does not address the trial court's denial of his request to test the personal computer or printer in his opening brief. As such, we will not address these two items on appeal.  *See* TEX.R.APP.P. 33.1(a).

The State's response mentioned additional evidence in its discussion--evidence that Appellant had not requested to be tested.  After the trial court entered its order denying DNA testing, Appellant late-filed a reply requesting testing of additional items that the State had mentioned in its general response, including:  (1) swabs of Chan's home and vehicle; (2) a shirt

found inside the Pontiac; (3) the gas and brake pedals from the Pontiac; and (4) duct tape samples. Because the State did not file an article 64.02 response or exhibits concerning the availability and condition of these additional items for DNA testing, the trial court could not have ruled on the eligibility of these items to be tested. *See* TEX.CODE CRIM.PROC.ANN. arts. 64.02, 64.03. As such, we restrict our review on appeal to the trial court's findings of fact and conclusions of law, which did not contemplate Appellant's late-filed reply and additional requests. *See* TEX.R.APP.P. 33.1(a). Appellant is not precluded from filing a subsequent Chapter 64 post-conviction motion for DNA testing; however the convicting court, and not this Court, enjoys the first opportunity to rule on such a request. *See* TEX.CODE CRIM.PROC.ANN. art. 64.01(a-1) (providing that a motion requesting post-conviction DNA testing must be filed in the convicting court); *see also State v. Swearingen*, 478 S.W.3d 716, 720-21 (Tex.Crim.App. 2015) (in denying convicted person's fifth motion for post-conviction DNA testing, noting that Chapter 64 motions are subject to the "law of the case" doctrine).

## C. Trial Court's Findings of Fact Are Supported by the Record

The trial court made express findings that Appellant did not meet various Chapter 64 requirements, to show he was entitled to testing. The record supports these findings.

### 1. Articles 64.01(a)(1) & 64.03(a)(1)(B), biological material suitable for DNA testing

**Cellular Phones:** The trial court's finding that Appellant did not demonstrate a reasonable likelihood that the cellular phones contained biological material suitable for DNA testing is supported by the record. Dove's affidavit swore that he personally viewed two cellular phones kept at the police department property office, and neither had any readily observable biological material present. Because the record contains no other evidence concerning the matter, the trial court's findings deserve deference. Thus, the trial court could not make the required finding under

articles 64.01(a)(1) and 64.03(a)(1)(B), that there was a reasonable likelihood that the items contained material suitable for DNA testing.

**1995 Pontiac:** The trial court's finding that the 1995 Pontiac was not available for testing should be afforded deference, as Dove's affidavit stated that law enforcement released the vehicle to the lienholder in 2011. Appellant's request to test the Pontiac did not satisfy the requirement of article 64.03(a)(1)(A)(i) and (ii) that the evidence still exists or has not been altered in any material respect.

### 2. Article 64.01(b)(2)(A), previously subjected to DNA testing

**Wood Board:** For evidence that was tested and did yield a result, Appellant must show that new testing techniques will provide a reasonable likelihood of results that are more accurate and more probative than the results of the previous test. *See LaRue v. State*, 518 S.W.3d 439, 448 (Tex.Crim.App. 2017); TEX.CODE CRIM.PROC.ANN. art. 64.01(b)(2)(A). Dove's affidavit indicated that the wood board was in police custody and had been tested, with results showing only DNA from Chan. The State provided a summary of the DNA analysis of stains from the wood board, indicating that Chan was the source of the DNA, to a reasonable degree of scientific certainty. The probability of an unrelated person at random who could be the source of the DNA profile was approximately 1 in 208.1 quintillion for Caucasians. Because Appellant did not establish that a new testing technique would provide a reasonable likelihood of results more accurate and more probative than the prior test, his Chapter 64 motion did not meet the statutory requirements. *See id.* art. 64.01(b)(2)(A).

### 3. Article 64.03(a)(2)(A), 51% chance Appellant would not have been convicted

The record also supports the trial court's finding that Appellant cannot show by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See id.* art. 64.03(a)(2)(A). "Exculpatory results" means only

results that exclude the convicted person as the donor of the material. *See Reed*, 541 S.W.3d at 774. The Court of Criminal Appeals has explained that "[i]n a given case, the presence of a third party's DNA may not have any tendency to exonerate the defendant from the crime." *Hall v. State*, 569 S.W.3d 646, 656 (Tex.Crim.App. 2019). Even when the presence of a third party's DNA may tend to be exonerating, the defendant's burden is not satisfied "if the record contains other substantial evidence of guilt independent of that for which [he] seeks DNA testing." *Id.*

The record before this Court contains substantial evidence of guilt independent of that for which Appellant seeks DNA testing. Appellant announced to the trial court that he pleaded guilty because he was guilty of murdering Chan. *See Ramirez*, 621 S.W.3d at 722 (instructing that a defendant's confession is properly considered in determining whether he met his burden under article 64.03(a)(2)(A)). Appellant does not dispute Castillo's statement to law enforcement detailing how he asked Castillo to drive him to Chan's apartment, where Appellant was staying. During the interaction, Appellant told Castillo that he was unhappy living with Chan and announced a plan to "jack" Chan's computer to make some money.

The Chief Medical Examiner's report indicated that Chan was found murdered in her dining room. Silver duct tape was wrapped around her eyes, nose, and ankles, and she was bound by an extension cord that was attached to her vacuum cleaner. The Medical Examiner concluded that Chan's cause of death was multiple blunt impact trauma to the head, and manner of death was homicide. He retrieved a wood chip from one of the wounds to Chan's scalp. Appellant does not dispute that he was living in Chan's apartment at the time she was murdered, or that his DNA was on the duct tape that bound her when she was killed. Appellant also does not dispute that he confessed to killing her with a wood board. DNA evidence that may show someone other than

Appellant was also involved in the crime does not exonerate him. *See Hall*, 569 S.W.3d at 657-58.

Appellant has also not explained the relevance of the requested items to his conviction. Although an article 64.03(a)(2)(A) analysis requires a court to presume exculpatory results of the putative testing, it does not require a court to presume an item's relevance to the question of the offender's identity. *See Reed*, 541 S.W.3d at 774-75. In *Reed v. State*, the Court of Criminal Appeals concluded that a defendant could not establish that condoms, beer cans, and a paper napkin were connected to a murder simply because they were found near the crime scene. *See id.* at 775. The court rejected the defendant's request to test additional items found inside the decedent's truck simply because a perpetrator could have touched them, finding that the defendant did not demonstrate relevance or that exculpatory results injected doubt sufficient to cause a jury to acquit. *Id.*

As in *Reed*, Appellant has not established the relevance of the requested items to the offender's identity. The record does not indicate who owned or used the cellular phones or where law enforcement found the items. Likewise, evidence excluding Appellant as the donor of biological material from the Pontiac would not negate his plea and admission to the trial court that he murdered Chan with a wood board. The Medical Examiner's report indicated that Chan was found lying on the floor of her dining room, not in her vehicle. Furthermore, because the wood board was already tested and did not match Appellant, the item's potential exculpatory nature was previously known. *See id.* at 773 (concluding that the accused did not establish that he would have been acquitted if exculpatory DNA results were obtained, in part, because the jury already knew that many of the items did not match him).

The items collectively do not corroborate a defensive theory proposed by Appellant at the time of trial. *See Routier v. State*, 273 S.W.3d 241, 256-59 (Tex.Crim.App. 2008) (concluding post-conviction DNA testing was warranted when items the defendant wanted tested corroborated her defensive theory at trial). Even if Appellant was able to show some relevance towards the items, exculpatory results that would only "muddy the waters" are insufficient to show that the defendant would not have been convicted. *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex.Crim.App. 2002).

As such, the trial court properly denied Appellant's motion for DNA testing because he did not meet the pleading requirements of article 64.01, and he did not make the required showing under article 64.03(a). We thus overrule Appellant's first issue.

### III. THE TRIAL COURT WAS NOT PRESENTED WITH CONSTITUTIONAL CHALLENGE

Appellant next argues that Texas Code of Criminal Procedure Chapter 64 is unconstitutional as applied to his case, because it violates his Eighth and Fourteenth Amendment rights to fundamental fairness by denying him access to DNA testing. The State responds that Appellant did not preserve the issue, because he did not raise it in the trial court. We agree.

Appellant did not raise this issue in his Chapter 64 motion. "'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error." *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex.Crim.App. 2014). To the extent Appellant's argument may be interpreted as raising a facial challenge to Chapter 64, he may also not do so for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009). We thus overrule the issue as not preserved.

## IV. CONCLUSION

Having overruled both of Appellant's issues on appeal, we affirm the trial court's judgment denying relief.

JEFF ALLEY, Justice

June 30, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

16