

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,023

**BRITTANY MARLOWE HOLBERG, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPEAL IN CAUSE NO. 11,492-C
### FROM THE 251st DISTRICT COURT
### OF RANDALL COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., concurred in the result.

### O P I N I O N

This is an appeal from an order denying the appellant's motion for post-conviction

DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure.[1]  We affirm

---

[1]  TEX. CODE CRIM. PROC. ch. 64.  Because the appellant was sentenced to death, direct appeal is to this Court.  *Id.* art. 64.05.

the convicting court's order.

## BACKGROUND

The appellant was convicted of capital murder and sentenced to death for the robbery-murder of eighty-year-old A.B. Towery, Sr. Towery was walking back to his apartment after purchasing groceries on the afternoon of November 13, 1996, when the appellant asked to use his telephone. When Towery allowed the appellant to enter his apartment, a struggle ensued in which Towery sustained fifty-eight stab wounds and multiple blunt-force trauma injuries. The appellant used several items in the apartment as weapons, including a cast iron skillet, a steam iron, a hammer, a paring knife, a butcher knife, and two forks. Additionally, the appellant shoved a lamp base five inches down Towery's throat. The appellant—a severe drug addict—was high on crack cocaine when this attack occurred. After the attack, the appellant showered, changed into some of Towery's clean clothes, and fled the scene with $1,400 in cash and prescription medications, both stolen from Towery's apartment. Later that evening, she purchased more cocaine using a portion of the cash she had stolen earlier. Towery's son, Rocky Towery, discovered his father's body at 7:45 a.m. the following morning in a supine position with the lamp base lodged in his throat, a knife stuck in his abdomen, and his father's wallet lying on top of his body.

The appellant was charged by indictment with committing capital murder by intentionally committing murder in the course of attempting to commit and committing

robbery and burglary.[2]   The prosecution's theory throughout trial was that the appellant

formed the intent to take Towery's money prior to approaching him and that, after entering

his apartment and committing the murder, she took $1,400 in cash from his wallet and certain

prescription medications that were scattered throughout the home.[3]   The jury found the

appellant guilty as charged in the indictment and assessed a sentence of death.  This Court

affirmed the judgment of conviction and sentence on direct appeal.[4]

In November of 2012, the appellant filed a motion for DNA testing of Towery's

wallet, alleging that the absence of her biological material on the wallet would prove that she

did not commit an act of theft against Towery—which she contends was the effective

linchpin of her capital-murder conviction.  The convicting court denied the appellant's

motion, concluding that: (1) the evidence to be tested does not contain biological material;[5]

and (2) the appellant failed to establish by a preponderance of the evidence that she would

not have been convicted of capital murder had exculpatory results been obtained through

DNA testing.[6]   The appellant now appeals the convicting court's adverse ruling on her

---

[2] *See* TEX. PENAL CODE §§ 19.03(a)(2), 29.02(a)(1), & 30.02(a)(1), (3).

[3] Towery had various physical ailments causing chronic pain and requiring prescription medications.  The appellant, meanwhile, had a history of prescription pain medication abuse.

[4] *Holberg v. State*, 38 S.W.3d 137 (Tex. Crim. App. 2000).

[5] TEX. CODE CRIM. PROC. art. 64.01(a-1).

[6] TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A).

motion for post-conviction DNA testing of Towery's wallet.

**CHAPTER 64**

Chapter 64 of the Code of Criminal Procedure allows a convicted person to "submit to the convicting court a motion for forensic DNA testing of evidence containing biological material."[7]  Such a motion requests testing of evidence that was "secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the State during the trial" but either was not previously tested or, although previously tested, can be tested with newer techniques that would provide more "accurate and probative" results.[8]  A convicting court may order testing only if (1) the evidence "still exists and is in a condition making DNA testing possible;" (2) the evidence "has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect;" and (3) "identity was or is an issue in the case."[9]  To obtain the requested testing, the movant has the burden of showing by a preponderance of the evidence that she "would not have been convicted if exculpatory results had been obtained through DNA testing," and that "the request for the proposed DNA testing is not made to unreasonably

---

[7] TEX. CODE CRIM. PROC. art. 64.01(a-1).

[8] *See* TEX. CODE CRIM. PROC. art. 64.01(b); *see also State v. Swearingen*, __ S.W.3d __, 2014 WL 440910, at *3 (Tex. Crim. App. Feb. 5, 2014) (explaining the requisites of Chapter 64 motions).

[9] TEX. CODE CRIM. PROC. art. 64.03(a)(1).

delay the execution of [the appellant's] sentence[.]"[10]

In the instant case, there is no dispute that the State has maintained proper possession of the wallet at all times since it was secured in relation to the offense, and that it has been subjected to a chain of custody sufficient to establish that the wallet has not been "substituted, tampered with, replaced, or altered in any material respect."[11] Similarly, the parties agree that the evidence still exists in a condition making DNA testing possible, and that the appellant's request for testing was not made to unreasonably delay the execution of her sentence or the administration of justice.[12] The only issues currently in dispute are, first, whether the wallet contains biological material; and, second, whether the appellant has shown by a preponderance of the evidence that she would not have been convicted had exculpatory results from a DNA test of the wallet been available at the time of trial.

In reviewing a trial court's ruling on a motion for post-conviction DNA testing under Chapter 64, this Court ordinarily gives "almost total deference" to the trial court's resolution of questions of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider *de novo* all other application-of-law-to-fact

---

[10]

TEX. CODE CRIM. PROC. art. 64.03(a)(2).

[11]

TEX. CODE CRIM. PROC. art. 64.03(a)(1)(A)(ii).

[12]

The appellant does not presently have an execution date.

questions.[13] Moreover, this Court will not consider post-trial evidence when deciding whether or not the appellant has carried her burden to establish by a preponderance of the evidence that she would not have been convicted had exculpatory results been obtained through DNA testing.[14] Thus, despite the influx of newly asserted post-trial factual developments that the appellant calls upon us to consider, our review is limited to discerning whether, and to what extent, exculpatory results from a DNA testing of the wallet would alter the landscape if added to the mix of evidence that was available at the time of trial.

## ARTICLE 64.01—"CONTAINING BIOLOGICAL MATERIAL"

Article 64.01 requires that the item sought to be tested "contain[] biological material."[15] "[B]iological material" is defined as: "an item that is in [the] possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing[.]"[16] We have previously held that, in order to meet Article 64.01's requirements, the appellant "must *prove* biological material exists and not that it is merely

---

[13] *E.g., Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

[14] *See Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002) ("The language of Article 64.03(a)(2)(A) and its legislative history . . . do not contemplate a consideration of appellant's 'new' post-trial information.").

[15] TEX. CODE CRIM. PROC. art. 64.01(a-1).

[16] TEX. CODE CRIM. PROC. art. 64.01(a)(1).

probable."[17]  Relatedly, Article 64.01 does not allow for the appellant to conduct a test that is merely a predicate to a subsequent DNA test—it does not, for example, authorize the appellant to conduct a preliminary test to determine if the item would be susceptible to DNA testing.[18]

In support of her contention that the wallet contains biological material, the appellant offers affidavits from two forensic scientists and a DNA consultant.  Kenneth R. Moses, the Director of Forensic Identification Services (an independent crime laboratory), states in his affidavit that "[finger]prints may have been deposited in a mixture of both perspiration and blood [on the wallet]."  Dr. Elizabeth Johnson, a forensic scientist specializing in  DNA analysis, states that "there is a high probability that [the appellant] would have left blood on the interior surfaces of the wallet."[19]  And Dr. Rick Staub, an Independent Forensic DNA

---

[17] *Swearingen*, 2014 WL 440910, at *4 (citing, *inter alia*, *Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008)).

[18] *See Routier*, 273 S.W.3d at 250 (Tex. Crim. App. 2008) ("Nothing in Chapter 64 entitles [the appellant] to have [a non-DNA test] performed . . . as a predicate to seeking post-conviction DNA testing.").

[19] Johnson also states that "[t]he storage conditions under which the wallet has been maintained while in possession of the State are uncertain.  If the wallet was properly preserved, . . . however, it could be reliably presumptively tested *for the presence . . . of blood*." (emphasis added).  This calls into question her conclusion that there is a "high probability" that the wallet contains biological material.  Additionally, these statements suggest that a predicate test—one "for the presence . . . of blood"—is required before an actual DNA test may be performed.  But, as mentioned, Chapter 64 movants are not entitled to such testing. *See Routier*, 273 S.W.3d at 250 (Tex. Crim. App. 2008).

Consultant,[20] opines that if someone went through Towery's wallet and stole its contents as the prosecution theorized at trial, "DNA from microscopic skin cells would have been deposited on the interior surfaces of the wallet or items contained therein."

The State asks us to affirm the trial court's finding that "the evidence [the appellant] seeks to have tested does not contain biological material" by holding that "[t]he assertions of [the appellant]'s experts are . . . insufficient to satisfy Article 64.01(a-1)." We acknowledge that the probabilities expressed by the appellant's experts that the wallet contains biological material—especially those expressed by Moses ("prints *may have been* deposited")[21] and Johnson ("there is a *high probability* that she . . . left blood on the . . . wallet")[22]—arguably raise concerns about whether the appellant has satisfied *Swearingen*'s requirement that Chapter 64 movants "*prove* biological material exists and not that it is merely probable."[23] On the other hand, Staub's assertion that "DNA from microscopic skin cells *would have*" been deposited in the wallet at least arguably approaches, and perhaps even

---

[20] We note that although both parties refer extensively to Dr. Staub's affidavit, after an exhaustive search of the record, Staub's affidavit is nowhere to be found. In light of our disposition of this issue, however, we need not speculate as to the implications of the absence of this affidavit in the appellate record. *But see Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007) (it is the "appellant's burden to bring forward a record on appeal sufficient to show that the trial court erred in [its] ruling on the motion") (citing *Guajardo v. State*, 109 S.W.3d 456, 462 n.17 (Tex. Crim. App. 2003)).

[21] Emphasis added.

[22] Emphasis added.

[23] 2014 WL 440910, at *4.

surpasses, this burden. In any event, we decline to adjudge whether these experts' assertions, considered either individually or in concert, ultimately satisfy *Swearingen*'s requirement of beyond-"mere[]"-probabilistic proof of biological material,[24] because, notwithstanding her success or failure in this regard, we agree with the trial court that the appellant "has failed to establish by a preponderance of the evidence that she would not have been convicted of capital murder if exculpatory results had been obtained through DNA testing."

## ARTICLE 64.03—"WOULD NOT HAVE BEEN CONVICTED"

In order for the appellant to be entitled to post-conviction DNA testing, she must show by a preponderance of the evidence (that is, a greater than 50% likelihood) that she would not have been convicted had any exculpatory results generated by the proposed testing been available at the time of her trial.[25] This Court has construed "exculpatory results" to mean

---

[24] In our 2014 opinion in *Swearingen*, we stated that a Chapter 64 movant "must *prove* biological material exists and not that it is merely probable" and cited, in support of that proposition, both our *earlier* opinion in *Swearingen*, decided in 2010, and *Routier*, decided in 2008. *See Swearingen*, 2014 WL 440910, at *4 (citing *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010), and *Routier*, 273 S.W.3d at 250). In each of these earlier opinions, Article 64.01(a) provided only that "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence *containing biological material*." TEX. CODE CRIM. PROC. art. 64.01(a) (2007) (emphasis added), *amended by* TEX. CODE CRIM. PROC. art. 64.01(a) (2011). In 2011, however, Article 64.01(a) was amended to make clear that "biological material" includes all "other identifiable biological evidence that *may be suitable* for forensic DNA testing." TEX. CODE. CRIM. PROC. art. 64.01(a) (emphasis added). We need not, based on our disposition of this issue, decide whether this amendment to Article 64.01(a) operates to lessen the burden on Chapter 64 movants to prove the existence of biological material within the items they seek to have tested. In any event, the instant appellant does not pursue such an argument in her brief, and we will accordingly leave this issue to be resolved at such time as it may be squarely before us.

[25] *See Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005).

only results "excluding [the convicted person] as the donor of this material . . . ."[26] Therefore, the appellant must show that, more likely than not, she would not have been convicted had the jury been able to weigh evidence that she did *not* deposit biological material on the wallet against the balance of the evidence presented at trial. The appellant's argument in this regard is that "[i]f DNA test results suggest [that the appellant] did not rifle [through] the wallet . . . this would disprove the State's claim that she committed a theft by removing the [$1,400 cash] from Towery's wallet." According to the appellant, this exculpatory result, if presented at trial, would have sufficiently "undermined" the State's reliance on the capital-murder-aggravating theory of robbery so as to create a "substantial likelihood" that the jury would have declined to convict her of capital murder.

"A person commits [robbery] if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, [the person] . . . intentionally, knowingly, or recklessly causes bodily injury to another."[27] Theft, in turn, occurs when "[a] person . . . unlawfully appropriates property with intent to deprive the owner of property."[28] Thus, while the offense of *theft* has an acquisitive component, commission of the offense of *robbery* requires only that the person be *in the course of committing* a theft. In this case, the jury was

---

[26] *Swearingen*, 2014 WL 440910, at *5 (quoting *Blacklock v. State*, 235 S.W.3d 231, 232 (Tex. Crim. App. 2007)).

[27] TEX. PENAL CODE § 29.02(a)(1).

[28] *See* TEX. PENAL CODE § 31.03(a).

properly instructed that "[t]he term 'in the course of committing' an offense means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the offense."[29]

Thus, in applying these concepts to the facts of this case, the jury could reasonably have found that the appellant committed the capital-murder aggravator of robbery *even if* it also believed that the appellant did not leave Towery's apartment with the $1,400 cash contained in the wallet. Indeed, the jury could reasonably have concluded that the appellant committed a robbery even if it believed that she did not take possession of the cash or wallet *at all*, but nevertheless had the *intent* to take possession (and, in furtherance of that intent, inflicted bodily injury on Towery). In either of these scenarios, the bodily injury inflicted on Towery, which ultimately resulted in his death, would have been carried out while the appellant was "in the course of committing" the theft, notwithstanding any exculpatory DNA evidence tending to indicate that she never *in fact* "rifled" through the wallet.

Moreover, even if exculpatory DNA evidence made it crystal clear that the appellant did not remove the $1,400 cash from Towery's wallet, the prosecution's alternate

---

[29] *Holberg v. State*, No. 73,127, slip op. at 11 (Tex. Crim. App. Nov. 29, 2000) (opinion on point of error not designated for publication; *see* Tex. R. App. P. 77.2 ("A majority of the judges will determine . . . whether the opinion (or a portion of the opinion) will be published.")). Because Westlaw's pagination of the unabridged opinion ends at page 141 (which is the location of the concluding paragraph of the published—and, therefore, abridged—opinion in the *physical* reporter), the best we can do to provide an *electronic* source is to direct the reader to paragraph 19 of the unabridged *Holberg* opinion, found on the Westlaw website at 38 S.W.3d 137 (discussing "point of error number seventeen"). We also observed, in our discussion of that point of error, that the trial court generally "instructed the jury accurately on the pertinent statutory elements of capital murder, murder, manslaughter, robbery, burglary, and theft." *Id.*

theory—that the appellant committed robbery by stealing the large quantity of prescription medications scattered throughout Towery's apartment—was thoroughly explored at trial. Witnesses testified that Towery had as many as "seven to ten" bottles, and "at times" more than ten bottles, of prescription pain medications scattered in plain view throughout his apartment. Indeed, "at times" there were so many prescription bottles that "it was hard to count" because "he had a lot." The jury learned that it "would be very unusual" if there were only two bottles of prescription pain pills in plain view at Towery's apartment, as was the case at the time police arrived. Much of the trial, moreover, centered around the appellant's history of prescription pain medication abuse and addiction.

These considerations are enough to convince us that even if exculpatory results were obtained from a DNA test of the wallet, those results would not negate the inference, forcefully argued to the jury, that the appellant stole Towery's prescription medications. The jury could, therefore, have reasonably concluded that the appellant committed a robbery by taking the prescription medications *independently* of any doubts it may have had that the appellant stole the $1,400 cash. Consequently, because the appellant's non-acquisition of the cash would either fail to negate the inference that the appellant engaged in assaultive conduct while harboring an *intent* to obtain possession of the cash, or would fail to negate the inference that the assault occurred "in the course of committing" theft by obtaining possession of the prescription medications, any exculpatory results obtained from a DNA test of the wallet would not establish, by a preponderance of the evidence, that the appellant

would not be convicted of capital murder.

In short, we are unable to say that it is more likely than not that the jury "would not have . . . convicted" the appellant of capital murder,[30] even if it were convinced that she had never touched the wallet, in light of the credible alternative avenues to determine, beyond a reasonable doubt, that she committed a robbery against Towery that did not depend on the appellant touching the wallet. As a result, the appellant has failed to satisfy her burden under Article 64.03.

**CONCLUSION**

The appellant has not met Article 64.03's requirement that she prove by a preponderance of the evidence that she would not have been convicted had exculpatory results been obtained from the item she seeks to have tested. As a result, the court below did not err to deny her Chapter 64 motion for post-conviction DNA testing. The convicting court's order is affirmed.

DELIVERED: APRIL 2, 2014
PUBLISH

---

[30] TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A).