# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00061-CR

---

**Melvin Auston, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-11-300068, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Auston was convicted in 2012 of aggravated robbery of an elderly person and sentenced to 50 years' imprisonment. On appeal, this Court modified Auston's conviction to delete a finding that Auston had used a deadly weapon during the commission of the offense and affirmed his conviction as modified. *See Auston v. State*, No. 03-12-00482-CR, 2014 WL 1285810, at \*5 (Tex. App.—Austin Mar. 27, 2014, pet. ref'd) (mem. op., not designated for publication). Subsequently, Auston filed a motion for DNA testing and motion for appointment of counsel, both of which the district court denied. We will affirm the district court's order.

# BACKGROUND

The victim in the case was Jimmie Frances Willes, an 80-year-old woman at the time of the offense. At trial, Willes testified that on the afternoon of January 3, 2011, she was driving home from an H.E.B. in North Austin when she observed a Ford Explorer following "very closely" behind her. When she parked in her driveway, the Ford parked beside her vehicle. Willes noticed that the driver of the Ford was a woman, and a man "wearing a black cap of some kind" exited the passenger side of the vehicle. The man "came over and he squatted down beside" the driver's side door of Willes's vehicle. The man "showed [Willes] a gun and said, I have a gun, hand me that purse over there." Willes hesitated, and the man told her, "Don't kid yourself, I will shoot." As Willes reached for her purse, the man "reached over and grabbed it and took it." After that, the man "immediately got in the car and they started driving off." As the car drove away, Willes was able to see the last four numbers on the vehicle's license plate. Willes wrote the numbers on a newspaper when she got inside her house and later reported the numbers to the police. Willes identified Auston in court as the man who had robbed her.

One of the items inside Willes's purse was her checkbook. Willes closed her checking account after the robbery and began monitoring the account for unauthorized activity. Two days after the robbery, Willes learned that a check "dated January 5th made out to Melvin Frederick Auston for $550" had been forged with her signature and cashed. Later, several other forged checks made out to Auston were also deposited into his checking account. Willes notified the Austin Police Department of the account activity, and Detective Roger Boudreau, who had been assigned to the robbery investigation, obtained copies of the checks, which were admitted into evidence.

The checking-account activity was traced to the Bryan / College Station area, and Boudreau contacted Detective Michael Lundy with the College Station Police Department for assistance in the investigation. Lundy determined that a Ford Explorer with a license-plate number that matched the last four digits of the suspect vehicle was registered to Rundar Williams, who was later identified as Auston's girlfriend. The Ford was found parked at a local motel. There, officers executed an arrest warrant for Auston and Williams, both of whom were staying at the motel.

During the subsequent search of the motel room and Ford Explorer, officers recovered Willes's purse, bank card, driver's license, and other belongings. The officers also found a "PowerLine .117-caliber [BB] gun" underneath a "black stocking cap," which were admitted into evidence as State's Exhibits 1 and 2, respectively. The State alleged that the BB gun was the weapon used during the robbery and that the black stocking cap had been worn by Auston during the robbery. DNA testing on the gun and cap indicated that Auston "cannot be excluded as a contributor" to the DNA that was recovered from the items.

Rundar Williams, Auston's girlfriend, testified for the State. Williams recounted her version of the events before, during, and after the robbery, including that she was the driver of the Ford, that Auston was the passenger, and that, after they arrived at the victim's house, Auston got out of the vehicle, "pointed the gun at the lady," grabbed her purse, returned to the Ford, and told Williams where to drive. Williams also identified State's Exhibit 1 as the weapon used by Auston during the robbery and State's Exhibit 2 as the hat that Auston had worn during the robbery. During Williams's testimony, the district court admitted into evidence security camera footage from the H.E.B. parking lot on the day of the robbery. Williams identified the victim, the victim's vehicle, Williams's Ford Explorer, and Auston in the video.

3

Based on this evidence, the jury convicted Auston of aggravated robbery.

## STANDARD OF REVIEW

When reviewing trial court rulings on motions for DNA testing and appointment of counsel, we "defer to the trial court's determination of issues of historical fact and application of law to fact issues that turn on the credibility and demeanor of the witnesses." *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005); *see Weems v. State*, 550 S.W.3d 776, 779 (Tex. App.—Houston [14th Dist.] 2018, no pet.). However, where, as here, there has been no hearing and no witnesses, "the trial court is in no better position" than the appellate court to decide the issues, and our review is de novo. *See Smith*, 165 S.W.3d at 363; *Weems*, 550 S.W.3d at 779.

## DISCUSSION

**Motion for DNA testing**

In his motion for DNA testing, Auston sought retesting of State's Exhibits 1 and 2, the BB gun and the black knit cap that were allegedly used during the robbery. In its order denying testing, the district court found that Auston's "motion for post-conviction DNA testing fails to show that any additional testing would produce exculpatory results that demonstrate that he would not have been convicted if these results had been presented at trial." Based on that finding, the district court concluded that the statutory requirements for DNA testing of the exhibits had not been satisfied. In his first issue, Auston asserts that the district court erred in denying his motion for DNA testing.[1]

---

[1] Although Auston's brief fails to identify specific issues on appeal, we liberally construe his arguments as challenging the district court's denial of (1) his motion for DNA testing and

4

Chapter 64 of the Code of Criminal Procedure authorizes post-conviction forensic DNA testing only if certain statutory requirements are met. *See* Tex. Code Crim. Proc. arts. 64.01, .03; *see also Swearingen v. State*, 303 S.W.3d 728, 731 (Tex. Crim. App. 2010) ("Chapter 64 requires multiple threshold criteria to be met before a convicted person is entitled to DNA testing."). These requirements include the convicted person "establish[ing] by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. art. 64.03(a)(2)(A). A "preponderance of the evidence" means "a greater than 50% likelihood" that appellant "would not have been convicted had any exculpatory results generated by the proposed testing been available at the time of [his] trial." *Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014). "Exculpatory results" mean results "excluding [the convicted person] as the donor" of the DNA material. *Id*. Thus, "the appellant must show that, more likely than not, [he] would not have been convicted had the jury been able to weigh evidence that [he] did not deposit biological material on the [tested items] against the balance of the evidence presented at trial." *Id*. If "retesting would not show by a preponderance of the evidence that [a]ppellant would not have been convicted, then there is no reason for the court to order the DNA testing." *Prible v. State*, 245 S.W.3d 466, 469–70 (Tex. Crim. App. 2008).

Additionally, when the evidence at issue has been "previously subjected to DNA testing," as it was in this case, a convicted person may obtain retesting of that evidence only if the evidence: (1) can be subjected to testing with newer testing techniques that provide a

---

(2) his motion for appointment of counsel. *See* Tex. R. App. P. 38.9 (providing that briefing rules are to be construed liberally). We also note that Auston has filed a "motion to reconsider" a deadline imposed by this Court requiring Auston to file his brief no later than July 23, 2020. Because we ultimately allowed Auston to file his brief after the deadline (and in fact gave him ample time to file an amended brief, which he did not do), we dismiss that motion as moot.

reasonable likelihood of results that are more accurate and probative than the results of the previous test, Tex. Code Crim. Proc. art. 64.01(b)(2)(A); or (2) was tested at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing practices, and the evidence was tested during the period identified in the audit as involving faulty testing practices, *id*. art. 64.01(b)(2)(B). Moreover, the convicted person must provide "statements of fact" in support of the claims in his motion; general, conclusory assertions are insufficient. *See id*. art. 64.01(a-1); *Swearingen*, 303 S.W.3d at 732; *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002); *see, e.g.*, *Routier v. State*, 273 S.W.3d 241, 251 (Tex. Crim. App. 2008) (motion included affidavit from expert who provided statements of fact specifying that current testing procedures were better than prior techniques and would make it more likely that retesting would yield accurate results).

In this case, Auston's motion failed to include any statements of fact suggesting that the evidence at issue could be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous tests. *See* Tex. Code Crim. Proc. art. 64.01(b)(2)(A). Nor did Auston provide in his motion any statements of fact indicating that the evidence was tested at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing practices, during the period identified in the audit as involving faulty testing practices. *See id*. art. 64.01(b)(2)(B). In written objections that Auston filed *after* the district court ruled on his motion, Auston made general statements referring to issues with the Austin crime lab, specifically that "[p]rosecutors used flawed forensic swab matches that might have led to the convictions of hundreds of potentially innocent [people] that used misleading data drawn from Austin Police Department DNA-testing crime lab." Even if

6

these statements had been before the district court at the time it made its ruling, *see Asberry v. State*, 507 S.W.3d 227, 229 (Tex. Crim. App. 2016) (holding that "all of the evidence that was before the trial court before it made its ruling should be available to, and considered by, the reviewing court" on appeal), they do not contain any facts specific to the evidence tested in Auston's case and thus do not satisfy the requirements for retesting of that evidence, *see* Tex. Code Crim. Proc. art. 64.01(a-1), (b)(2)(B); *Dinkins*, 84 S.W.3d at 642; *see also Aekins v. State*, No. 03-16-00598-CR, 2017 WL 2333213, at \*7 (Tex. App.—Austin May 25, 2017, pet. ref'd) (mem. op., not designated for publication).

Moreover, even if Auston had made statements of fact in his motion that were sufficiently specific to satisfy the requirements for retesting, he would still need to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through testing. *See* Tex. Code Crim. Proc. art. 64.03(a)(2)(A). He has failed to do so here. At trial, in addition to the victim's in-court identification of Auston as the man who had robbed her, Auston's girlfriend provided detailed testimony implicating Auston in the crime, and she identified Auston in security-camera footage taken from the H.E.B. parking lot that showed a man standing outside the Ford Explorer before getting inside the vehicle, which then proceeded to follow the victim's vehicle out of the parking lot. Additionally, copies of checks forged with the victim's signature, taken from the victim's stolen purse, and made payable to Auston and deposited into his checking account, were admitted into evidence. Also, Auston was found with his girlfriend at the motel where the vehicle used in the robbery was parked, where several items stolen from the victim were found, and where the BB gun and the knit cap used in the robbery were also discovered. We cannot conclude on this record that it is "more likely than not" that Auston "would not have been convicted had the jury been able to weigh evidence that

7

[he] did not deposit biological material on the [tested items] against the balance of the evidence presented at trial." *See Holberg*, 425 S.W.3d at 287; *Swearingen*, 303 S.W.3d at 738; *Leal v. State*, 303 S.W.3d 292, 302 (Tex. Crim. App. 2009); *see also In re Fletcher*, No. 03-19-00044 CR, 2020 WL 742383, at *4–5 (Tex. App.—Austin Feb. 14, 2020, no pet.) (mem. op., not designated for publication). Accordingly, the district court did not err in denying the motion for DNA testing.

We overrule Auston's first issue.

## Motion for appointment of counsel

In its order denying testing, the district court also found that Auston had failed to establish "that reasonable grounds exist for the filing of a motion for post-conviction DNA testing" and that, therefore, the district court was not required to appoint counsel to assist Auston in the filing of that motion. In his second issue, Auston asserts that the district court erred in failing to appoint counsel.

Chapter 64 requires the convicting court to appoint counsel if, among other requirements, "the court finds reasonable grounds for a motion to be filed." Tex. Code Crim. Proc. art. 64.01(c). The issues involved in a motion requesting court-appointed counsel and a motion requesting post-conviction DNA testing are "interrelated." *Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011). Although "a convicted person need not prove entitlement (or a prima facie case of it) to DNA testing as a precondition for obtaining appointed counsel, whether 'reasonable grounds' exist for testing necessarily turns on what is required for testing," including the requirement "that this is the type of case in which exculpatory DNA results would make a difference." *Id*. at 891. If exculpatory results "would not change the

8

probability that the inmate would still have been convicted, then there are no reasonable grounds to appoint an attorney and no justification for ordering any testing." *Id*. at 892. In other words, exculpatory results "must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Id*.

This was not the type of case in which exculpatory DNA results would have made a difference at trial. As discussed above, Auston was identified in court by the victim, implicated in the crime by his girlfriend (who also identified him on video taken from the parking lot where the suspect vehicle first followed the victim's vehicle), and found at the same motel where the vehicle used in the robbery was parked and belongings stolen from the victim and items used during the robbery were found. Additionally, some of the checks that were stolen from the victim were made payable to Auston and deposited into his checking account. We cannot conclude on this record that exculpatory DNA results would "affirmatively cast doubt upon the validity" of Auston's conviction or do anything more than "muddy the waters." *See id*. at 892; *Lewis v. State*, 191 S.W.3d 225, 228–29 (Tex. App.—San Antonio 2005, pet. ref'd); *see also In re Keller*, No. 03-18-00420-CR, 2019 WL 1561817, at *10 (Tex. App.—Austin Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication). Accordingly, the district court did not err in denying Auston's motion for appointment of counsel on the ground that Auston failed to establish "that reasonable grounds exist for the filing of a motion for post-conviction DNA testing."

We overrule Auston's second issue.

**Other issues**

In his brief, Auston also complains of issues beyond the scope of his motion for DNA testing, including the admission at trial of "bad character evidence," insufficient evidence to support his conviction, and prosecutorial misconduct. However, as this Court has previously explained, "chapter 64 is not an invitation to review every potential error in the underlying trial proceedings; instead, it is simply a procedural vehicle for obtaining evidence 'which might then be used in a state or federal habeas proceeding.'" *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.) (citing *Thacker v. State*, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005)). "Accordingly, chapter 64 does not confer jurisdiction on an appellate court to consider 'collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles.'" *Id.* (quoting *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd)). The other issues raised by Auston are beyond the scope of chapter 64, and we cannot consider them here. *See id.*; *see also Weems*, 550 S.W.3d at 782.

## CONCLUSION

We affirm the district court's order.

10

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   August 11, 2021

Do Not Publish