**Affirmed and Opinion Filed June 1, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00465-CR

## ROYAL DOUGLAS ROBINSON, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F16-00017-U

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Breedlove

Royal Douglas Robinson, pro se, appeals the trial court's order denying his motion for post-conviction DNA testing on a pair of latex gloves. In four issues, appellant contends the trial court erred in denying the motion and made other errors at trial. For the reasons that follow, we affirm.

BACKGROUND

In the underlying trial, the jury found that appellant intentionally caused J.L. Armington's death in the course of kidnapping or attempting to kidnap Armington. Armington was shot twice and died from his wounds. Although the jury

was instructed to acquit if it found or had a reasonable doubt whether appellant acted in self-defense, the jury found appellant guilty of capital murder as charged in the indictment. The trial court sentenced appellant to confinement for life without the possibility of parole. This Court subsequently affirmed appellant's conviction and the Court of Criminal Appeals denied appellant's petition for review. *Robinson v. State*, No. 05-16-00449-CR, 2017 WL 2264823, at *3 (Tex. App.—Dallas May 24, 2017, pet. denied) (mem. op., not designated for publication).

In 2019, appellant filed a motion for forensic DNA testing on a pair of latex gloves found at the crime scene. *See* TEX. CODE CRIM. PROC. ANN. Ch. 64 (Motion for Forensic DNA Testing). He contended that DNA testing would provide "impeaching evidence" to "the State's claim that I wore the latex gloves." He argued that gunshot residue was found on his hands, supporting his contention that he was not wearing the gloves because he was the kidnap victim, not Armington. The State responded that appellant failed to make the required showing that he "would not have been convicted if exculpatory results had been obtained through DNA testing." *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A).

The trial court denied appellant's motion by order dated May 2, 2022. The court found that based on its consideration of the pleadings, the record, and the requirements of Chapter 64, appellant had "failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing." This appeal followed.

–2–

ISSUES

In two of his four issues, appellant challenges the trial court's denial of his motion for post-conviction DNA testing on the latex gloves. In his first issue, he contends the trial court erred in denying the motion because he satisfied the statutory requirements for obtaining DNA testing and had "chronologically proved the totality of the State's evidence was false." In his fourth issue, he contends that his DNA counsel was ineffective for failure to file a formal motion identifying the gloves as the evidence to be tested.

Appellant's second and third issues are challenges to the underlying trial proceedings. In his second issue, he argues that the trial court erred by (a) seating a juror whose voir dire responses indicated she could not be fair and impartial and (b) failing to remove a juror for alleged misconduct. In his third issue, he argues the State sponsored false testimony at his trial and withheld exculpatory evidence.

APPLICABLE LAW AND STANDARD OF REVIEW

Under Chapter 64 of the code of criminal procedure, a convicted person may request the convicting court to order "forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1). The evidence to be tested must have been "secured in relation to the offense that is the basis of the challenged conviction," "in the possession of

the state during the trial of the offense," and not previously subjected to DNA testing.[1] *Id.* art. 64.01(b).

The convicting court may order DNA testing only if it finds that (1) the evidence still exists and is in a condition making DNA testing possible; (2) the evidence has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or materially altered; (3) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and (4) the perpetrator's identity was or is an issue in the case. *Id.* art. 64.03(a)(1); *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011).

The trial court must also find that the convicted person established by a preponderance of the evidence that (1) he is not requesting the testing to unreasonably delay the execution of his sentence or the administration of justice, and (2) he would not have been convicted if exculpatory DNA test results had been obtained. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2); *Gutierrez*, 337 S.W.3d at 889.

"An appeal under article 64.05 is limited to a review of the trial court's rulings in the post-conviction DNA proceedings." *Fuller v. State*, No. 05-22-00573-CR, 2023 WL 2180573, at *2 (Tex. App.—Dallas Feb. 23, 2023, no pet. h.) (mem. op.,

---

[1] In limited circumstances, article 64.01(b)(2) also permits DNA testing of evidence that was previously subjected to DNA testing.

not designated for publication). "Chapter 64 does not confer jurisdiction on an appellate court to consider collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of [Chapter 64's] articles." *Id.* (citing *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd)).

When reviewing a trial court's ruling on a Chapter 64 motion, we use a bifurcated standard of review. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). "We give almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor." *Id.* "But we review de novo all other application-of-law-to-fact questions." *Id.* at 768–69; *see also LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) ("[T]he ultimate question of whether a reasonable probability exists that exculpatory DNA tests would change the result on guilt-innocence is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed de novo.").

DISCUSSION

## 1.     DNA Testing

### A.     Trial evidence

We review the evidence relevant to the trial court's Chapter 64 ruling that appellant "failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing,"

–5–

and specifically, evidence relating to the gloves. *See* TEX. CODE CRIM. PROC. ANN. art. 64.04; *Fuller*, 2023 WL 2180573 at *2. Armington was shot in his own car. The gloves were later found at the crime scene, on the car's rear floorboard.

At the time of his death in 2015, Armington was engaged to appellant's ex-wife Catherine Harris. Appellant had previously forced Armington out of Harris's house at gunpoint and continued to express his animosity toward Armington in texts to Harris, including a message stating "I will get a second chance at blowing his brains out and I will." A few days before Armington's death, Harris changed her phone number and did not give appellant the new number.

As we discussed in appellant's appeal, witnesses saw a white car swerve down a street and crash head on into another car. *Robinson*, 2017 WL 2264823, at *1. Cedric Coleman witnessed the driver and a man in the back seat "tussling" over a handgun. *Id.* The passenger, appellant, held the gun's grip with two hands while the driver, Armington, held the barrel with one, trying to take the gun away from appellant. *Id.* Coleman yelled "gun" to bystanders, then ran. *Id.* Alicia McDowell described seeing Armington take off his seatbelt after the crash and reach into the back seat. She did not see anything in Armington's hands, however, and did not see anyone in the back seat. She heard one gunshot. Coleman heard one or two gunshots. *Id.* Armington died that day from gunshot wounds.

A police officer responding to a 911 call found appellant lying outside the car with a broken leg. Paramedics took appellant from the crash scene to the hospital, where hospital personnel found Armington's cell phone in appellant's pocket.

Police investigating the shooting found the gun and a fired cartridge casing on the ground under the car and concluded that appellant had placed them there. *Id*. There were two more casings and several bullet fragments underneath a towel on the right rear floorboard of the car, along with two whitish-colored latex gloves, one of which was missing a finger. The officers found what appeared to be a glove finger on the ground just to the right of the right rear door of the car.

Only one witness testified about the gloves at trial.[2] Detective Scott Bazan of the Dallas Police Department's Crime Scene Unit testified to finding the gloves in the car. On cross-examination, Bazan was asked why he took the gloves for testing but not the towel that was on top of them. Bazan responded that "it just seem[ed] odd to me that—that there was part of a finger—or part of the glove was—was on the street, just right of the right rear door and there was gloves in the car." He consulted with other detectives who concluded that "the gloves just seemed out of the ordinary." Bazan also testified it was possible that the gloves would have "the

---

[2] During the testimony of Courtney Ferreira, a forensic biologist and DNA analyst at the Southwestern Institute of Forensic Sciences (SWIFS), State's Exhibit 49, a serology test report, was admitted into evidence. The report includes test results for items submitted to SWIFS in connection with Armington's death. Two gloves and a piece of a glove were submitted. On one of the gloves, "[a] presumptive test for blood (Leuchomalachite Green Test) was positive for this item." The sample was insufficient for further serological analysis, but "the sample quantity may be sufficient for future DNA analysis." On that glove, as well as on the second glove and the "piece of glove," samples were collected "that may contain biological material suitable for DNA analysis." Ferreira was not questioned about these results, however.

–7–

epithelial cells on there" for DNA testing. Bazan, however, was not further involved in the investigation. He referred counsel to Steven David, the lead detective on the case, for further information. Although David later testified before the jury and was cross-examined, he was not asked any questions about the gloves.

The gloves have not been tested for DNA. DNA testing was performed on potential samples from the gun's trigger, grip, and slide. Samples from the gun magazine, nine unfired cartridges, and three fired cartridges were also tested for DNA. The results were inconclusive, with the exception of the swab from the gun's slide. That swab yielded a low-level male DNA profile consisting of two genetic markers. Both appellant and Armington were included as possible contributors to the profile, with a random match probability of one in two. Attempts to obtain fingerprints from the car, the gun, and the cartridges were unsuccessful.

Although gunshot-residue (GSR) analysis was performed, neither party offered the results into evidence at trial. Analysts at SWIFS tested sample stubs collected from the backs of appellants' and Armington's hands. Nine particles of primer GSR were confirmed on the sample stubs from appellant's hands, five on the left hand and four on the right hand. One GSR particle was confirmed on the sample stub from Armington's left hand.

During closing argument, appellant's counsel suggested the State failed to test the gloves for DNA because the results would have been favorable to appellant:

[APPELLANT'S COUNSEL] Now, there was a—there was a pair of gloves in there. And I'm sure gloves—I'm sure gloves would have had DNA. They weren't tested.

[STATE'S COUNSEL]: Your Honor, I'm going to object. This Court did grant a continuance to the defense so that they could be allowed to test the gloves back in February. That is completely an improper argument.

THE COURT: I'm going to sustain the objection. The jury will recall the evidence. You may proceed.

[APPELLANT'S COUNSEL]: Well, Judge, ladies and gentlemen of the jury, we don't have a murder. We don't have a murder. [The defense] can test the gloves if we want to. We don't have to test the gloves. . . . [The State] has the burden.

Appellant's counsel concluded that given the lack of DNA evidence in the car or on the gun, it was "up to the State to bring" other evidence to establish appellant's guilt, but the State failed to do so. The jury, however, rendered its verdict against appellant.

## B.    Appellant's arguments

Most of appellant's arguments in support of his first issue are challenges to the credibility of the evidence admitted at trial. He discusses thirteen such challenges in support of his argument that exculpatory results from a DNA test would far outweigh the evidence the State presented at trial. The credibility of the State's evidence, however, was determined by the jury at trial. We concluded in the underlying appeal that there was sufficient evidence to support the jury's verdict. *See Robinson*, 2017 WL 2264823, at *1. As we have explained, Chapter 64 does not confer jurisdiction on an appellate court to review collateral attacks on the trial court's judgment or any matters beyond Chapter 64's scope. *See Fuller*, 2023 WL

–9–

2180573, at *2. Consequently, our discussion is limited to appellant's arguments that address his burden to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results were obtained through DNA testing of the gloves. *See* TEX. CODE CRIM. PROC. ANN. art. 64.04.

Appellant argues that DNA testing would refute the State's claim that he wore the gloves in his altercation with Armington. He argues (1) his hands had more gun residue on them than Armington's, supporting his version of his struggle with Armington and refuting the State's contention that he was wearing the gloves, (2) Alicia McDowell, a witness to the accident, saw Armington hide the gloves in the back seat, and (3) a serologist's note[3] reflects "red brown stains" on the thumb of one of the gloves, matching a note in the autopsy report of an abrasion on Armington's thumb, "proving that [Armington] was wearing the latex gloves at the exact time of the accident and therefore he kidnapped [appellant]." In particular, appellant contends DNA evidence on the gloves would refute eyewitness Coleman's testimony that he saw appellant holding a gun firmly in both hands and pointing it

---

[3] As part of his third issue, appellant argues the defense and the jury were unaware of the information in the serology notes at trial. He alleges that the State withheld the notes in violation of *Brady v. Maryland*. 373 U.S. 83, 87 (1963) (prosecution's suppression of material evidence favorable to accused violates due process). Chapter 64 does not authorize us to consider appellant's *Brady* complaint. *Phillips v. State*, No. 05-04-00532-CR, 2005 WL 1819598, at *3 (Tex. App.—Dallas Aug. 3, 2005, pet. withdrawn) (mem. op., not designated for publication). And in any event, the record reflects that the serology notes were produced to the defense prior to trial. The notes are listed on appellant's acknowledgement of discovery rights signed before trial in compliance with code of criminal procedure article 39.14, and accordingly were made available to the defense prior to trial. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Discovery).

at Armington, who had his hand on the barrel of the gun and was trying to wrestle it away from appellant.

### C.  Analysis

In determining whether appellant has met his burden under Chapter 64, we must presume that testing of the gloves would exclude him as the donor of the biological material tested. *See Reed*, 541 S.W.3d at 774. We consider whether the exculpatory results "would alter the landscape if added to the mix of evidence that was available at the time of trial." *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014). But if the results would "merely muddy the waters," appellant has not met his burden. *Gutierrez*, 337 S.W.3d at 892.

Further, exculpatory results do not relieve appellant from showing the likelihood that he would not have been convicted if the jury had been able to consider and to weigh this exculpatory evidence against the other available evidence. *See Reed*, 541 S.W.3d at 774; *Holberg*, 425 S.W.3d at 287. "Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010).

We first note that witness McDowell said nothing about the gloves. Although she testified that she saw the driver unbuckle his seat belt and reach into the back passenger seat, she did not know "what he was doing." She testified that she could

see Armington's hands, and he had nothing in them. She was not asked by either counsel about the gloves. Appellant does not cite any other evidence to support his contention that Armington hid the gloves in the back seat.

The State argues that appellant did not meet his burden to show by a preponderance of the evidence that he would not have been convicted if exculpatory DNA test results from the gloves had been available at trial. The record reflects that the State did not argue or attempt to prove at trial that appellant was wearing the gloves. As we have explained, the only testimony about the gloves was elicited by defense counsel on cross-examination. Instead, the State offered evidence that we summarized in the underlying appeal and concluded was sufficient to support appellant's conviction:

> Police investigating the shooting found the gun and a shell casing under the car and concluded that appellant had placed them there. The jury could have inferred intent from this attempt to conceal incriminating evidence. In addition, the specific intent to kill may be inferred from the use of a deadly weapon. . . . [E]vidence of a struggle [for the gun] does not necessarily negate deliberate conduct. Jurors could have determined that the "tussle" was Armington's effort to stave off appellant's intentional attempts to shoot him. . . .
>
> Appellant's car was found parked within walking distance, but away from view, of Armington's home. A neighbor saw an individual walking away from the car at approximately 5:30 a.m. Armington shared a house with appellant's ex-wife, Catherine Harris. The peephole in their front door was covered from the outside sometime after Harris left the house that morning, preventing Armington from seeing someone outside. Witnesses testified that Armington would never have voluntarily gotten into a car with appellant or offered him a ride. Harris told police that Armington would likely have seen appellant if he were hiding in Armington's car, but evidence established that it was dark and raining between 7:15 and 7:30 when Armington must

–12–

have left the house. Appellant was in the back seat of the car when it crashed, behind Armington, where appellant could see and direct him. Finally, appellant was in control of the gun: he shot Armington twice, then threw or placed the gun and a casing under the car.

*Robinson*, 2017 WL 2264823, at *1–2 (citations omitted).

The State also addresses appellant's contention that Armington's DNA may be found on the gloves. The State argues that even if testing showed that result, "it would not show when that DNA was deposited under what circumstances." The State contends that the presence of Armington's DNA on the gloves "would not be surprising" since they were found in Armington's own car. Further, in his affidavit supporting his motion for DNA testing, appellant did not contend that Armington was wearing the gloves. Appellant contended instead that "while Armington held the gun and my hands covered his, the gun discharged fatally injuring him." He concluded that the lack of gunshot residue on Armington's hands was "proof that my hands covered Armington's," contradicting eyewitness Coleman's testimony that appellant held the gun's grip with both hands and Armington held its barrel as it discharged. The State concludes that "far from being the 'deciding factor' in this case, the gloves had no known connection to Armington's kidnapping and murder other than their presence inside his crashed car."

We conclude that appellant failed to prove by a preponderance of the evidence that, in light of presumed exculpatory DNA results, he would not have been convicted. *See Reed*, 541 S.W.3d at 774. The absence of appellant's DNA on the gloves does not eliminate appellant as the shooter. Nor would the presence of

–13–

Armington's DNA on the gloves establish that Armington was the shooter, especially given the evidence in the record regarding appellant's motive and the eyewitness testimony. Instead, exculpatory DNA results would merely "muddy the waters" when added to the mix of evidence that was available at the time of trial. *Id.* We decide appellant's first issue against him.

## 2. Ineffective assistance of counsel

In his fourth issue, appellant claims his counsel was ineffective for failing to specify in the Chapter 64 motion that the gloves were the items to be tested, and for making errors in the case's caption before filing a corrected version. This Court has concluded, however, that there is no constitutional right to counsel in a Chapter 64 proceeding. *Hughes v. State*, 135 S.W.3d 926, 928 (Tex. App.—Dallas 2004, pet. ref'd). Accordingly, appellant "has no right to raise a claim of constitutionally ineffective assistance of counsel in a Chapter 64 proceeding." *Id.*

Even if there were such a right, we conclude appellant's claim is not supported by the record. Appellant initially filed a pro se motion that sought "forensic DNA testing of latex gloves," and the State's response was specifically and solely directed to the request to test the gloves. Consequently, the issue was expressly presented to the trial court and appellant cannot show that the alleged deficient performance prejudiced his defense. *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (adopting two-prong test of *Strickland v. Washington* 466 U.S. 668, 694 (1984), requiring defendant to "show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different"). We decide appellant's fourth issue against him.

### 3. Trial-related claims

Appellant's second and third issues are complaints about his underlying trial. An appeal under article 64.05, however, is limited to a review of the trial court's rulings in the post-conviction DNA proceedings. *Rice v. State*, No. 05-22-00135-CR, 2023 WL 128392, at *4 (Tex. App.—Dallas Jan. 9, 2023, no pet.) (mem. op., not designated for publication) (citing *Hughes v. State*, 135 S.W.3d 926, 928 (Tex. App.—Dallas 2004, pet. ref'd). Chapter 64 does not confer jurisdiction on this Court to entertain collateral attacks on the trial court's judgment or to revisit matters that should have been raised on direct appeal. *Id.* Accordingly, appellant's claims about jury selection, juror misconduct, and the State's alleged misconduct in sponsoring false testimony and withholding exculpatory evidence at trial are outside the scope of this Chapter 64 proceeding and appeal. *See id.*; *see also Phillips*, 2005 WL 1819598, at *3 (Chapter 64 does not authorize court of appeals to consider appellant's *Brady* complaint that the State failed to disclose exculpatory evidence). We decide appellant's second and third issues against him.

CONCLUSION

The trial court's May 2, 2022 "Order Denying Robinson's Motion for Post-Conviction DNA Testing" is affirmed.

220465f.u05
Do Not Publish
TEX. R. APP. P. 47.4

/Maricela Breedlove//
MARICELA BREEDLOVE
JUSTICE

–16–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROYAL DOUGLAS ROBINSON, Appellant

No. 05-22-00465-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F16-00017-U. Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of June, 2023.