

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00001-CR

———————————————————

GERALD ANTHONY WRIGHT, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 0272196D

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

Gerald Anthony Wright appeals the trial court's order denying his second motion for postconviction forensic DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01(a-1). In a single issue, Wright argues that the trial court's order denying his motion was in error.[1] Because Wright failed to carry his statutory burden, we will affirm the trial court's order. *See id.* art. 64.03(a)(2).

## II. BACKGROUND

One evening in 1985, an employee at a Tarrant County hospital called hospital security to report that he had seen someone breaking the window of a truck on the neighboring property. Approximately 30 minutes later, a nurse saw Wright, wearing a dark blue coat, stealing a purse from a nurse's station. Wright ran when he noticed the nurse and was eventually apprehended by hospital security, still carrying the stolen purse. The hospital employee who made the initial call identified Wright as the person seen breaking the truck window, and a consensual search of Wright's person produced a remote-control beeper that had been in the purse before Wright took it.

Approximately 30 minutes after hospital security apprehended Wright, B.M., whose hospital room was twenty feet from the nurse's station where Wright stole the

---

[1]Wright's motion for postconviction DNA testing also included a request for appointment of counsel, which the trial court denied. Wright's brief does not challenge the denial, so it is not before us. *See* Tex. R. App. P. 38.1.

purse, informed hospital staff that she had been raped by a black man wearing a blue coat while another man held her. B.M. was a terminal cancer patient in the hospital,[2] and the left side of her body was paralyzed. Her gown had been ripped off and pulled down around her knees, and a piece of the torn fabric had been tied around her neck. When a nurse entered the room, B.M. told the nurse, "Honey, I've been raped." She repeated, "I've been raped. Watch out, he may get you."

B.M. had fresh abrasions and cuts on her leg, and there was blood on her bed rail. Dr. Larry Green examined B.M. in the hospital room and prepared smear slides of samples taken with a sexual assault examination kit. Police collected evidence from the room including B.M.'s top bedsheet and blue bed pad, a swab of blood from the bed rail, a control sample of B.M.'s blood, and the sexual assault examination kit prepared by Dr. Green. Police also collected Wright's clothing.[3]

After a jury trial, Wright was convicted of sexual assault and sentenced to life in prison. This court affirmed his conviction. *See Wright v. State*, No. 02-86-00137-CR (Tex. App.—Fort Worth January 13, 1988, no pet.) (not designated for publication).

Later, Wright filed his first motion for forensic DNA testing of all biological evidence. The trial court granted the motion and ordered testing of 18 enumerated items that potentially contained biological evidence.

---

[2]She died in January 1986, before Wright's case went to trial.

[3]No DNA testing was performed or offered as evidence in Wright's trial.

That testing occurred in 2004 and found spermatozoa (the cellular constituents of semen) on the smear slides prepared from the sexual assault examination kit,[4] a blue bed pad, a white sheet, and Wright's shirt and pants. The DNA profiles found on the smear slides, the white sheet, and Wright's clothes were consistent with Wright's DNA profile. No DNA profile was obtained from the blue bed pad. After a hearing to review the results of the tests, the trial court found that there was no reasonable probability that Wright would not have been prosecuted or convicted had the results been available during his trial. *See* Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03.

In 2023, Wright filed his second motion for postconviction forensic DNA testing or retesting of biological evidence. Wright moved for retesting of the blue bed pad and the white sheet from the victim's bed and for testing of the swabs from the evidence collection kit—as opposed to the slides and samples prepared from those swabs—and of the sample of blood found on the victim's bed rail. In his unsworn declaration submitted in lieu of an affidavit, Wright stated that the evidence he sought to have tested or retested "had the potential impact upon the jury to secure a guilty verdict" because the biological evidence was seen to establish his identity.

The State responded to Wright's motion and filed proposed findings of fact and conclusions of law. The State provided an email from Texas Department of Public Safety Garland Crime Laboratory's DNA section supervisor Chelsy Wingate analyzing

---

[4]The smear slides were not all labeled, although no source of smear slides other than the examination kit appears in the record.

4

the likelihood that new testing would invalidate the previous results and opining that newer testing would not invalidate the results of the 2004 testing. When asked about her expectations from the newer testing, Wingate wrote, "[t]here is nothing wrong with the older methods used, we have evolved as technology has changed. . . . A high inclusion using the old method isn't going to change to an exclusion with the new method."

The trial court denied Wright's motion and issued findings of fact and conclusions of law. Wright now appeals the trial court's denial of his second motion for retesting.

### III. DISCUSSION

In one issue, Wright argues that the trial court erred by denying his second motion for DNA testing. Because he has failed to carry his statutory burden, we overrule his sole issue.

### A. Applicable Law

A convicted person may file a motion for forensic DNA testing of evidence containing biological material. Tex. Code Crim. Proc. Ann. art. 64.01(a-1). The movant may request testing of evidence that was in the State's possession during trial and that either was not previously tested or, although previously tested, can be tested with newer techniques that would provide more "accurate and probative" results. *Id.* art. 64.01(a)(2)(A); *see Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014). A convicting court may order testing only if (1) the evidence "still exists and is in a

5

condition to make DNA testing possible"; (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect"; and (3) "identity was or is an issue in the case." Tex. Code Crim. Proc. Ann. art. 64.03(a)(1); *Holberg*, 425 S.W.3d at 284.

Additionally, a movant must prove by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that "the request for proposed DNA testing is not made to unreasonably delay the execution of [the convicted person's] sentence." Tex. Code Crim Proc. Ann. art. 64.03(a)(2); *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Holberg*, 425 S.W.3d at 284.

When reviewing a trial court's ruling on a motion for DNA testing under Chapter 64 of the Texas Code of Criminal Procedure, we apply a bifurcated standard of review. *Reed*, 541 S.W.3d at 768; *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Under this standard, "we give almost total deference to the judge's resolution of historical fact issues supported by the record and application-of-law-to-fact questions turning on witness credibility and demeanor" but "we review de novo all other application-of-law-to-fact questions." *Reed*, 541 S.W.3d at 768–69.

## B. Application

Wright sought testing and retesting of evidence using Y-STR[5] testing techniques. The evidence for which Wright sought retesting was tested in 2004, using polymerase chain reaction testing. Wright argues that Y-STR testing would be "more probative" and "provide a reasonable likelihood of results that are more accurate" than previously used testing methods. He also argues that the DNA evidence from his clothing was the result of his having had intercourse with another woman earlier that night.

If, regardless of the results, retesting would not show by a preponderance of the evidence that the accused would not have been convicted, then there is no reason for the trial court to order DNA retesting. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). Discovery of another person's DNA is not exculpatory when other sufficient evidence supports the conviction. *See id; Leatherman v. State*, No. 02-21-00163-CR, 2022 WL 3905078, at *4 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.).

Even if we presume that Y-STR retesting would reveal the identity of another person who had been in B.M.'s room, or that retesting the evidence from Wright's clothes would reveal he had intercourse with a woman other than B.M., other sufficient

---

[5]Y-STR DNA testing examines known genetic patterns on the Y-chromosome of DNA—found only in males. *See Curtis v. State*, 205 S.W.3d 656, 661 (Tex. App.—Fort Worth 2006, pet. ref'd). Labs have been using Y-STR markers since the mid-1990s. *See id.* Y-STR testing was available in 2004, when Wright's evidence was previously tested. *See Wood v. State*, 693 S.W.3d 308, 330 (Tex. Crim. App. 2024) (citing *Thacker v. State*, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005) and recognizing that Y-STR testing was available before 2004).

evidence supports his conviction. Eyewitness testimony placed Wright at the scene at the time of the assault. B.M. identified him as having sexually assaulted her and provided a physical description of him. Due to her poor health, B.M. was physically incapable of having torn her gown or tied the strip of cloth around her throat. Biological evidence tested in 2004 contained both Wright's and B.M.'s DNA and showed a strong positive result for both. Having reviewed the 2004 results, Wingate opined that newer testing could not invalidate the earlier results. So, even presuming that Wright's requested DNA testing produced an exculpatory result, sufficient other evidence supports Wright's conviction. *See Prible*, 245 S.W.at 470.

Because Wright has failed to meet his burden to show by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through his requested DNA testing, we overrule his sole issue. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2); *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010); *Prible*, 245 S.W.3d at 470.

## IV. CONCLUSION

Having overruled Wright's sole issue, we affirm the trial court's order.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 26, 2025

8