**Affirmed and Memorandum Opinion filed September 9, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00796-CR

---

### THOMAS DEWAYNE MORELAND, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 149th District Court
### Brazoria County, Texas
### Trial Court Cause No. 54671-3

---

### MEMORANDUM OPINION

This appeal involves appellant's third attempt at post-conviction DNA testing.[1] We hold that the trial court did not err by denying his third motion for DNA testing because (1) he has not shown that the State manufactured false evidence; (2) he is procedurally barred from relitigating the testing of items that he

---

[1] *See Moreland v. State*, No. 14-15-01025-CR, 2016 WL 1671616 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet.) (mem. op., not designated for publication) (per curiam); *Moreland v. State*, No. 14-14-00035-CR, 2014 WL 3051298 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op., not designated for publication) (per curiam).

previously requested to be tested and items that were previously tested; and (3) he has not shown that he would not have been convicted if exculpatory DNA testing results had been obtained for newly requested, previously untested items.

## I. BACKGROUND

### A. Factual Background[2]

The decedent was found in her bedroom after having been raped, strangled, and beaten to death. Appellant confessed to his aunt and then to police officers that he killed the decedent. He admitted to entering the decedent's residence through a window, biting through the decedent's telephone cord, sexually assaulting the decedent, strangling her, and beating her with a can of green beans. He led the police to a storage unit where he had hidden his bloody black pants. The decedent's blood was on the pants. Vaginal swabs of the decedent included sperm that contained appellant's DNA. His DNA was also on the telephone cord and can of green beans. Appellant pleaded guilty to murder and aggravated sexual assault with an agreed sentence of fifty years' imprisonment.

### B. Procedural Background

Appellant, acting pro se, filed his first motion for DNA testing in 2013. He sought DNA testing of (1) a fingerprint on the decedent's window, (2) the bitten telephone cord, (3) "the can of tomato paste the attorney said that [appellant's] DNA was on it that showed that [he] hit the victim in the head with," (4) a pair of bloody black pants taken from a storage unit, and (5) appellant's "sperm DNA that was tested with the victim and all mixture DNA." Appellant wrote in the motion that he had been taken to a hospital, a warrant was issued to a staff member of the

---

[2] In reciting the factual background, we consider appellant's brief and the State's exhibits attached to its response to appellant's third motion for DNA testing, which include a police report and the results of DNA testing.

2

hospital, and a nurse at the hospital extracted his blood and hairs from his head and pubic region. The trial court denied the motion, and this court affirmed. *See Moreland v. State*, No. 14-14-00035-CR, 2014 WL 3051298 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op., not designated for publication) (per curiam).

Appellant, again acting pro se, filed his second motion for DNA testing in 2015. He sought DNA testing of (1) a telephone cord that was bitten into at the decedent's house; (2) a "bean" or "tomato paste" can that was used to hit the decedent; (3) a pair of black jeans with blood on it that was located in a storage facility; and (4) vaginal swabs of the decedent. The trial court denied the motion, and this court affirmed. *See Moreland v. State*, No. 14-15-01025-CR, 2016 WL 1671616 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet.) (mem. op., not designated for publication) (per curiam)

Appellant, with the assistance of counsel, filed a third motion for DNA testing—the motion that is the subject of this appeal. He sought DNA testing of the following items:

(1) Charcoal Gray Shorts-Blood Stain Left Pocket;
(2) Blue and Silver Shorts-G4;
(3) Gray Tank Top Shirt-Prospirt;
(4) Gray Mens Underwear-Fruit of the Loom;
(5) White and Blue Tennis Shoes-Cross Training;
(6) 2 Pieces of Blue Carpet-With Blood Stains;
(7) Buccal Swabs-Roy Singleton;
(8) Buccal Swabs-Thomas Moreland;
(9) Unopen Green Bean Can-Bent Victim's Room;
(10) Blue and White Tennis Shoe-Right Foot;
(11) Blue and Brown Satchel-Under Victim's Bed Side Table;
(12) Wooden Handle-Victim's Room;
(13) Black T-Shirt-ME Office;
(14) Debris From Forehead-From ME Office;
(15) Pulled Pubic Hair-ME Office;

3

(16) Pulled Head Hair-ME Office;
(17) Right Fingernail Clippings-ME Office;
(18) Left Fingernail Clippings-ME Office;
(19) Oral Swab-ME Office;
(20) Vaginal Swab-ME Office;
(21) Anal Swab-ME Office;
(22) Abdominal and Perineal Swipes-ME Office;
(23) Head Hair-Thomas Moreland;
(24) White Pillow and Green Pillow Case;
(25) Green Flat Sheet;
(26) Multicolored Quilt;
(27) Multicolored Comforter;
(28) Black and White Blanket;
(29) Swab of Blood from Right of Room Door;
(30) Cut Phone Cable;
(31) Swab From Victim's Cheeks;
(32) Pubic Hair-Thomas Moreland; and
(33) Swab From Victim's Mouth.

He also again sought testing of (1) a fingerprint on the decedent's window; (2) a telephone cord; (3) a vegetable can alleged to have been used to hit the decedent in the head; (4) a pair of pants alleged to contain the decedent's blood; and (5) vaginal swabs from the decedent.

Appellant argued that any previously tested items could be subjected to newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous tests. He argued, among other things, that if the items to be tested for DNA contained the DNA of a third party, there would be a greater than fifty percent chance that he would not have been convicted had he gone to trial.

Appellant also argued that "his DNA was never taken for comparison analysis," and he denied ever giving the State a buccal swab, blood, or hair follicles. He attached an affidavit, testifying that he was innocent and, "There are

4

allegations of fabrication and allegations that some of the DNA testing was fabricated or not done at all."

The State filed a response and attached evidence including the police report, DNA test results, appellant's prior motions, the search warrant for appellant's DNA samples, and a "return and inventory" affidavit sworn to and signed by a police officer. In the affidavit, the officer testified that he seized from appellant two tubes of blood, head and pubic hair, and buccal swabs. The police report recited, among other things, that appellant had been taken to the Brazosport Hospital to have his blood drawn and hair samples taken, and a nurse took the samples from appellant.

The trial court denied the motion by written order, ruling that appellant (1) was barred from relief under the doctrines of law of the case and estoppel, "insofar as Applicant's prior requests for DNA testing on certain items have been denied by this Court"; (2) failed to show that the evidence previously subjected to DNA testing could be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous tests; (3) failed to establish that identity was at issue; and (4) failed to show by a preponderance of the evidence that he would not have been convicted if exculpatory DNA results were obtained from the requested testing.

## II.   ANALYSIS

In his sole issue on appeal, appellant contends that the trial court "abused its discretion in denying whether a reasonable probability exists that exculpatory DNA tests would have caused appellant to not be convicted." Within the issue, appellant also contends that identity was at issue, and he repeats the claim that he never gave a buccal swab, blood, or hair for DNA testing. He does not challenge the trial court's ruling regarding law of the case and estoppel, nor does he

challenge the trial court's ruling that he failed to show that previously tested items could be subjected to newer testing techniques.

## A. Legal Principles and Standard of Review for Chapter 64 DNA Testing

A person may submit to their convicting court a motion for DNA testing of evidence that has a reasonable likelihood of containing biological material. Tex. Code Crim. Proc. art. 64.01(a-1). The motion must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion. *Id.* The motion may request DNA testing of evidence in the State's possession that was (1) not previously subjected to DNA testing, or (2) although previously tested, can be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test. *Id.* art. 64.01(b). The court may order DNA testing under Chapter 64 only if, among other things, the court finds that identity was "at issue" in the case and the convicted person establishes by a preponderance of the evidence that they would not have been convicted if exculpatory results had been obtained through DNA testing. *Id.* art. 64.03(a)(2)(A).

In reviewing the trial court's order denying DNA testing, we give "almost total deference to the trial court's resolution of questions of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeaner, but we consider de novo all other application-of-law-to-fact questions." *Holberg v. State*, 425 S.W.3d 282, 284–85 (Tex. Crim. App. 2014) (quotation omitted). We may infer findings necessary to support the trial court's ruling if they are reasonably supported by the record. *Cf. Dunning v. State*, 572 S.W.3d 685, 692 (Tex. Crim. App. 2019) (regarding trial court's ruling following testing).

6

**B.      Resolution of Fact Issues Regarding Prior Testing**

Assuming without deciding that a convicted person may use the Chapter 64 process for asserting a claim that the State fabricated DNA evidence, as appellant appears to do, the record does not undermine the trial court's implied rejection of this claim.[3]  In his affidavit, appellant does not testify regarding any material facts concerning the allegation that his biological material was not previously collected; he alleges merely that "[t]here are allegations of fabrication."  The State presented evidence through the police report, an affidavit, and appellant's own prior admission from his first motion for DNA testing to show that appellant's biological materials were collected.  Considering this evidence, the trial court reasonably could have found that appellant's biological materials were collected, and the court could have rejected appellant's contrary claim.  Thus, the trial court did not err by refusing DNA testing on items collected from appellant—his hair and buccal swabs.

**C.      Procedural Default for DNA Testing of Previously Requested Items and Previously Tested Items**

Appellant does not challenge or make any argument on appeal related to the trial court's rulings that (1) he is barred by the law-of-the-case doctrine and estoppel from requesting DNA testing on items that he had requested in his two prior motions; or (2) he failed to show that previously tested items could be subjected to newer DNA testing techniques.

Because appellant does not challenge a theory of law applicable to the case that supports the trial court's rulings regarding previously requested and previously tested items, we uphold the trial court's rulings without considering the merits of

---

[3] Habeas is available to challenge an involuntary guilty plea based on false evidence.  *See Ex parte Barnaby*, 475 S.W.3d 316, 322–23 (Tex. Crim. App. 2015).

the unchallenged bases for the rulings. *See Gutierrez v. State*, 585 S.W.3d 599, 614 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Copeland v. State*, 501 S.W.3d 610, 614 (Tex. Crim. App. 2016)); *see also Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *State v. Hoskins*, No. 05-13-00416-CR, 2014 WL 4090129, at *2 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op., not designated for publication) ("An appellant, whether the State or the defendant, must challenge all independent bases or grounds that fully support a judgment or appealable order.").

Accordingly, we cannot conclude that the trial court erred by denying DNA testing of the following items for which appellant previously requested DNA testing:

(1) a fingerprint on the decedent's window;
(2) the telephone cord;
(3) the can of green beans;
(4) the bloody black pants; and
(5) vaginal swabs of the decedent.

And, we cannot conclude that the trial court erred by denying DNA testing of the following additional items, which the State's evidence shows were previously tested:

(6) charcoal gray shorts;
(7) blue and white "cross training" tennis shoes;
(8) buccal swabs for Roy Singleton;
(9) buccal swabs for appellant;
(10) oral swab of the decedent;
(11) anal swab of the decedent; and
(12) abdominal and perineal swipes of the decedent.[4]

---

[4] Of these twelve items, only the fingerprint on the decedent's window was not previously tested for DNA. Appellant did not make any showing in the trial court, or on appeal, that the other eleven items could be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the

**D. Remaining Items: No Showing Appellant Would Not Have Been Convicted**

Excluding the items listed above, we will assume that DNA testing of the following items would be exculpatory:

(1) Blue and Silver Shorts-G4;
(2) Gray Tank Top Shirt-Prospirt;
(3) Gray Mens Underwear-Fruit of the Loom;
(4) 2 Pieces of Blue Carpet-With Blood Stains;
(5) Blue and Brown Satchel-Under Victim's Bed Side Table;
(6) Wooden Handle-Victim's Room;
(7) Black T-Shirt-ME Office;
(8) Debris From Forehead-From ME Office;
(9) Pulled Pubic Hair-ME Office;
(10) Pulled Head Hair-ME Office;
(11) Right Fingernail Clippings-ME Office;
(12) Left Fingernail Clippings-ME Office;
(13) White Pillow and Green Pillow Case;
(14) Green Flat Sheet;
(15) Multicolored Quilt;
(16) Multicolored Comforter;
(17) Black and White Blanket;
(18) Swab of Blood from Right of Room Door;
(19) Swab From Victim's Cheeks;
(20) Swab From Victim's Mouth.

*See Reed v. State*, 541 S.W.3d 759, 773 (Tex. Crim. App. 2017) (reciting items that could be tested, assuming without deciding that the results of DNA testing would be exculpatory).

To be entitled to Chapter 64 DNA testing of these items, appellant must show by a preponderance of the evidence—a greater than fifty percent

---

previous tests. *See* Tex. Code Crim. Proc. art. 64.01(b); *Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008). Thus, the trial court did not err in refusing DNA testing of these previously tested items. And even if we presumed exculpatory testing results of the fingerprint on the decedent's window, we would reach the same conclusion in Part II.D of this opinion, below.

likelihood—that he would not have been convicted if the proposed testing's exculpatory results were available at the time of trial. *Id.* at 774. "Exculpatory" in this context means results excluding appellant as the donor of DNA on these items. *Id.*

Appellant has not shown how exculpatory results of testing these items would result in a jury finding him not guilty, as opposed to merely "muddying the waters." *See id.* Appellant does not explain the significance of these items as they relate to the other evidence in the case. Nor is appellant's reliance on *Esparza v. State*, 282 S.W.3d 913 (Tex. Crim. App. 2009), persuasive. Esparza was convicted of aggravated sexual assault although he advanced an alibi defense, and the Court of Criminal Appeals concluded that there was a reasonable probability that he would not have been convicted if DNA testing of the rape kit were exculpatory because the evidence of guilt was based on eyewitness identification and other circumstantial evidence. *See id.* at 922.

Here, exculpatory results of testing these items would not undermine appellant's multiple confessions and the corroborating circumstances, including the presence of his DNA on the phone cord and can of green beans, his directing police officers to find his pants that contained the decedent's blood, and the presence of his sperm in the decedent's vagina. *See Reed*, 541 S.W.3d at 775–76 (convicted person failed to show by a preponderance of the evidence that he would not have been convicted of murder involving rape when the person's DNA profile was found in the semen inside the victim's vagina and the murder occurred near the time of the sexual encounter; "[t]he presumed exculpatory results do nothing to undermine the State's case or alter the evidentiary landscape"); *see also Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) ("Texas courts have consistently held that a movant does not satisfy his burden under Article

64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."). Moreover, we may consider that appellant pleaded guilty to both aggravated sexual assault and the murder. *Cf. Dunning v. State*, 572 S.W.3d 685, 694-95 (Tex. Crim. App. 2019) (considering the defendant's guilty plea while upholding trial court's finding that the defendant would have been convicted even though the post-conviction DNA testing excluded him as a major contributor to all items tested and revealed the presence of third-party touch DNA in the crotch area of the victim's shorts; noting that the defendant knew when he pleaded guilty that the State's case was based on identifications by an intellectually disabled and hearing-impaired victim who was under fourteen years of age and that there had been no DNA testing before his plea).

Because appellant did not show by a preponderance of the evidence that he would not have been convicted in light of presumed exculpatory DNA test results for the items listed above, we cannot conclude that the trial court erred in denying appellant's Chapter 64 motion for DNA testing of these items.

### III. CONCLUSION

Appellant's sole issue is overruled. The trial court's order denying appellant's third motion for DNA testing is affirmed.

/s/ Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).