

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00163-CR

_____

PAT LEATHERMAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. 14266

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In 2002, Appellant Pat Leatherman pleaded guilty to murdering his wife and was sentenced to 30 years in prison. In 2018, Leatherman filed a Motion for Forensic DNA Testing. Following a hearing, the trial court issued an order, which included findings of fact and conclusions of law, denying the motion. On appeal, Leatherman brings a single issue, arguing that the trial court erred by denying his motion for forensic DNA testing because the results would likely lead to Leatherman's exoneration. We will affirm.

## II. BACKGROUND

In March 2001, Leatherman's wife was shot and killed. Shortly after the shooting took place, Leatherman confessed to his brother that he had killed his wife and then called 911. During the 911 call, Leatherman admitted, in no uncertain terms, to shooting his wife and provided accurate details of the crime, including both the weapon and type of ammunition used and the location of the body.[1] When

---

[1] During the 911 call, Leatherman repeatedly confessed, stating at various times:
- "I just blew my wife's [expletive] away."
- "I just shot my wife with a 12 gauge shotgun. I don't think she's going to live."
- "We just had a real bad argument, and I just shot her, and I'm sorry."
- "I unloaded my shotgun until I ran out of shells."
- "I did a really bad thing. I blew my wife's [expletive] away."
- "I am confessing to you: I did shoot my wife."

2

Leatherman realized that he would likely be arrested, he disconnected the 911 call and left the crime scene before police arrived. Leatherman was later arrested after returning to the scene and attempting to leave in his pickup truck.

Police recovered five "spent" 12 gauge shotgun shells from the crime scene. Officers also found a 12 gauge shotgun and shells in Leatherman's pickup truck. After testing, the Tarrant County Medical Examiner (TCME) concluded that the "spent" shells recovered from the crime scene could have been fired from the shotgun found in Leatherman's truck.

After Leatherman's arrest, officers seized his clothing, including tennis shoes, gray coveralls, jeans, socks, a t-shirt, and a handkerchief, as evidence. The TCME analyzed these items for the presence of blood and DNA. Save for one sock, all of the clothing tested presumptively positive for the presence of blood. Additionally, the forensic DNA report showed: (1) the jeans contained the victim's DNA; (2) the gray coveralls did not contain the victim's DNA; (3) the t-shirt contained a mixture of DNA from at least two people—a major male contributor and at least one other person—and "[a]t all loci [typed]" minor DNA alleles were found that corresponded to those found in the victim's blood; (4) the handkerchief also contained a mixture of DNA from at least two people—a major female contributor and at least one other person—and "[a]t all loci typed" alleles were detected that were consistent with those found in the victim's blood; and (5) the victim could not be excluded as a contributor to the DNA obtained from the jeans, the t-shirt, and the handkerchief.

In September 2002, Leatherman pleaded guilty to murdering his wife, judicially confessed to the crime, and was sentenced to 30 years in prison.

In 2015, the director of the TCME's crime laboratory sent a letter to the Parker County District Attorney's office stating that the population data published by the FBI in 1999 and 2001 had been amended. In the FBI's opinion, the amended data was "unlikely to materially affect . . . [the] evidential value" of any previous DNA testing, and the discrepancies in profile probabilities based on the original data versus those based on the amended data "in no way change[d] the interpretation of inclusion or exclusion of an individual as a donor to a questioned genetic profile."

As a result of the amended population data, the TCME amended its forensic DNA report in January 2021.[2] The conclusions in the report relating to the gray coveralls and the jeans did not change—the victim's DNA was found on the jeans but not on the gray coveralls. However, the TCME was unable to update its conclusions concerning the t-shirt and the handkerchief because they were tested using a process no longer utilized by the TCME, and therefore no TCME analyst is currently qualified to interpret the data.

In 2018, Leatherman filed his motion for forensic DNA testing in which he requested additional DNA testing on the t-shirt and handkerchief as well as contact DNA testing of the shotgun and ammunition. Following a hearing, the trial court

_____

[2]The materials were not re-tested as part of the preparation of the amended report. Rather, the amended report merely provided revised statistical data based on the 2015 FBI Amended STR Population Database.

4

issued an order, which contained findings of fact and conclusions of law, denying the motion. This appeal followed.

### III. DISCUSSION

In his sole issue on appeal, Leatherman argues that the trial court erred by denying his motion for DNA testing because the results would likely exonerate him. The State counters by arguing that Leatherman has failed to satisfy the statutory requirements for obtaining post-conviction DNA testing as set forth in Chapter 64 of the Texas Code of Criminal Procedure. Specifically, the State asserts that Leatherman has failed: (1) to allege specific facts showing that he would not have been convicted if the requested DNA results were available at trial;[3] (2) to show that there are newer testing techniques that provide a reasonable likelihood of producing more accurate and probative results than the previous DNA tests;[4] (3) to show that identity is an issue in this case;[5] and (4) to prove by a preponderance of the evidence that Leatherman "would not have been convicted if exculpatory results had been obtained through DNA testing."[6]

---

[3]Tex. Code Crim. Proc. Ann. art. 64.01(a-1).

[4]*Id.* art. 64.01(b)(2)(A).

[5]*Id.* art. 64.03(a)(1)(C).

[6]*Id.* art. 64.03(a)(2)(A).

5

## A. Chapter 64

Under Chapter 64 of the Texas Code of Criminal Procedure, a convicted person may file "a motion for forensic DNA testing of evidence . . . containing biological material." Tex. Code Crim. Proc. Ann. art. 64.01(a-1). Such a motion requests testing of evidence that was in the State's possession during trial that either was not previously tested or, although previously tested, can be tested with newer techniques that would provide more "accurate and probative" results. *Id.* art. 64.01(b); *see also Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014). A convicting court may order testing only if (1) the evidence "still exists and is in a condition making DNA testing possible"; (2) the evidence "has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect"; and (3) "identity was or is an issue in the case." Tex. Code Crim. Proc. Ann. art. 64.03(a)(1); *Holberg*, 425 S.W.3d at 284. Additionally, to prevail on a Chapter 64 motion, a convicted person must prove by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of [the convicted person's] sentence[.]" Tex. Code Crim. Proc. Ann. art. 64.03(a)(2); *Holberg*, 425 S.W.3d at 284.

## B. Standard of Review

When reviewing a trial court's ruling on a Chapter 64 motion, we apply a bifurcated standard of review. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Under this standard, "we give almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor," but "we review de novo all other application-of-law-to-fact questions." *Reed*, 541 S.W.3d at 768–69.

## C. Analysis

In his brief, Leatherman argues that the trial court erred in denying his motion because the results of new DNA testing will likely lead to his exoneration. Leatherman bases his argument on the TCME's statements in its amended DNA report that the TCME was unable to update its conclusions concerning the DNA samples from the t-shirt and the handkerchief because no TCME analyst is currently qualified to interpret the data. Leatherman argues that because the TCME cannot currently update its analysis of the DNA obtained from the t-shirt and handkerchief, new DNA testing is required and that if this new DNA testing were to show that the victim's DNA is not present on the t-shirt or the handkerchief, then this would exonerate Leatherman.[7]

---

[7]Though Leatherman's motion also sought contact DNA testing of the shotgun and ammunition, his argument on appeal that new DNA testing would exonerate him

7

Leatherman's argument is conclusory and fails to satisfy the requirements of Chapter 64. A Chapter 64 motion for DNA testing "must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." Tex. Code Crim. Proc. Ann. art. 64.01(a-1). While Leatherman included an affidavit with his motion, he failed to allege any specific facts showing how the results of the requested DNA testing would be so exonerating that he would not have been convicted had the results been available at trial. *See Dunning v. State*, 572 S.W.3d 685, 697 (Tex. Crim. App. 2019). Rather than providing specific facts, Leatherman's motion and supporting affidavit merely contain general, unsupported assertions that the requested DNA testing will exonerate him.[8] However, such conclusory statements are insufficient to satisfy Leatherman's burden under

appears to be solely grounded on the TCME's statements in its amended forensic DNA report that the TCME was unable to update its conclusions regarding the DNA samples taken from the t-shirt and handkerchief. Indeed, Leatherman merely mentions the shotgun as an afterthought on the last page of his brief, stating only that in his motion, he "also noted the shotgun . . . had never been swabbed for contact DNA." Because Leatherman has failed to show how the requested contact DNA testing of the shotgun and ammunition would prove exculpatory, he has not satisfied the requirements of Chapter 64 regarding these items. Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A); *Fothergill v. State*, No. 05-15-00862-CR, 2016 WL 1435658, at *3 (Tex. App.—Dallas Apr. 11, 2016, pet. ref'd) (mem. op., not designated for publication).

[8]In addition to their conclusory nature, many of Leatherman's assertions concerning his exoneration involve tests other than "forensic DNA" tests and, therefore, are wholly irrelevant for purposes of Chapter 64. Leatherman repeatedly asserts that "blood splatter testing" and the "gun powder residue wipe down test" will prove his innocence. However, as these are not "forensic DNA" tests, they are not the proper subject of a Chapter 64 motion. *See* Tex. Code. Crim. Proc. Ann. art. 64.01(a-1).

8

Chapter 64. *In re Padilla*, No. 03-19-00388-CR, 2021 WL 126779, at *3 (Tex. App.—Austin Jan. 14, 2021, pet. denied) (mem. op., not designated for publication) ("To meet the burden of the Chapter 64 requirements, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient."); *see also Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010) (stating that "a mere assertion or a general claim" will not satisfy a movant's Chapter 64 burden).

Moreover, Leatherman has not shown that identity is an issue in his case. Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(C). For purposes of a Chapter 64 motion, identity is not an issue if "an exculpatory DNA result would not . . . exclude the movant as the assailant." *Hernandez v. State*, No. 13-20-00216-CR, 2022 WL 324069, at *3 (Tex. App.—Corpus Christi-Edinburg Feb. 3, 2022, no pet.) (mem. op., not designated for publication); *see also Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (holding that "if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused," the requirements of Chapter 64 have not been met). Here, even if new DNA testing did not show the victim's DNA on the t-shirt or the handkerchief, this would not exclude Leatherman as the shooter. Because Leatherman was not arrested until six hours after the shooting took place, he could easily have changed clothes between the time of the shooting and his arrest. Furthermore, the TCME's amended forensic DNA report confirmed the presence of the victim's blood on Leatherman's jeans, which

undermines any exculpatory effect that the absence of her DNA on the t-shirt and handkerchief might have. Accordingly, we see no reason to disturb the trial court's finding that Leatherman has failed to show that identity is an issue in this case.

Even if identity were an issue, given the overwhelming evidence of Leatherman's guilt, he cannot show by a preponderance of the evidence that he would not have been convicted if the results of the requested DNA testing had been available at trial. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A); *Swearingen*, 303 S.W.3d at 736 ("[I]n light of the overwhelming evidence of appellant's guilt, even if we were to grant appellant's request . . . , appellant cannot show by a preponderance of the evidence . . . that he would not have been convicted."). In this case, there is a mountain of inculpatory evidence against Leatherman, including the following:

- Leatherman confessed to his brother that he had shot his wife shortly after the incident and before law enforcement was involved;

- Law enforcement became involved in this case only after Leatherman called 911;

- Leatherman repeatedly confessed to shooting his wife with a shotgun on the 911 call;

- Leatherman provided accurate details about the shooting during the 911 call, including the location of the body and the type of weapon and ammunition used;

- Leatherman disconnected the 911 call when he realized that he was going to be arrested;

- Law enforcement found Leatherman's pickup truck outside of his trailer where his wife's body was found;

- Law enforcement found five shotgun shells on the ground by the trailer;

- Leatherman's relatives stated that Leatherman's relationship with his wife was rocky and violent;

- Testing determined that the shotgun found in Leatherman's truck could have been used to shoot the victim;

- The victim's blood was discovered on Leatherman's jeans;

- Appellant pleaded guilty in writing and in open court.

Thus, even excluding the DNA found on the t-shirt and handkerchief, the evidence against Leatherman is formidable. In light of the substantial evidence of his guilt, Leatherman has not satisfied his burden under Article 64.03(a)(2). *See Swearingen*, 303 S.W.3d at 736 ("Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt . . . ."); *Thompson v. State*, 95 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that the movant did not establish that DNA testing would produce exculpatory results when other competent evidence was available to show that he committed the offense).

Because Leatherman has not satisfied the requirements of Chapter 64, the trial court did not err in denying his motion. We therefore overrule Leatherman's sole issue.

## IV. CONCLUSION

Having overruled Leatherman's sole issue, we affirm the trial court's order.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 31, 2022