**AFFIRMED in part; DISMISSED in part and Opinion Filed January 9, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00135-CR**

**No. 05-22-00136-CR**

**REGINALD DONELL RICE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F14-76788-R and F14-76789-R**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Nowell, and Justice Smith
Opinion by Justice Smith

Pro se appellant Reginald Donell Rice appeals the trial court's denial of his Chapter 64 motion seeking post-conviction DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1). We dismiss Rice's sixth point of error for want of jurisdiction, overrule each of Rice's remaining points of error for the reasons discussed below, and affirm the trial court's order denying DNA testing.

### Factual and Procedural Background

Rice was convicted by a jury of two counts of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). His punishment was enhanced

due to two prior felony convictions,[1] and he was sentenced to seventy years' confinement in each case. This Court affirmed his convictions on direct appeal. *See Rice v. State*, Nos. 05-15-01427-CR, 05-15-01428-CR, 2017 WL 359755 (Tex. App.—Dallas Jan. 19, 2017, pet. ref'd) (mem. op., not designated for publication).

On direct appeal, we summarized the underlying facts of the offense as follows:

> On December 9, 2014, Rice knocked on the door to Room 332 at the Orange Extended Stay Hotel. When [Devaunce] McCoy, also known as Dee or Dee-Skeet, answered the door, Rice pulled out a handgun. McCoy tried to shut the door and then turned to run toward the window. Because he was in fear for his life, McCoy jumped from the third-story window. He suffered cuts from the broken glass, broken bones in his heel, and was briefly "knocked out" when he hit the ground. Rice fired fourteen shots into the room, hitting [Frederick] Evans in his stomach, hand, and arm, and Anthony Murphy, also known as Ant, in his stomach and side. Rice then left the room. A video surveillance camera recorded Rice running down the hallway with a gun in his hand.
>
> At trial, McCoy and Evans testified Rice was the shooter. Romerros Jackson, who was in Room 332, but was turned away from the door at the time Evans and Murphy were shot, testified that he heard gunshots immediately after Rice came into the room. Oleshia Brooks, who had left Room 332 just prior to the shooting, testified she passed Rice in the hallway and saw he had something long and black in his hand. She heard a gunshot as she walked down the hallway, turned around, and saw Rice shoot someone who was sitting in a chair. Tommy McKennis, who assisted Murphy prior to medical personnel arriving at the hotel, testified Murphy said that "Reggie" shot him.

*Id.* at *1.

---

[1] The judgments of conviction show "N/A" in the blanks for "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph"; however, Rice pleaded true to the enhancement alleged in the first paragraph, and the jury found it true in each case. Rice also pleaded true to the second enhancement paragraph, which is properly reflected in the judgments of conviction.

On May 7, 2020, Rice filed a motion seeking post-conviction DNA testing in each case. *See* CRIM. PROC. art. 64.01(a-1). Rice did not identify in his motion the evidence he wanted tested, and he offered only the following explanation as to how he would not have been convicted had exculpatory DNA test results been obtained: "This evidence would exclude a person from the group of persons who could have committed this offense."

The trial court directed the State to file a response. *See id.* art. 64.02(a). The State opposed Rice's motion, arguing that he had not met the requirements for Chapter 64 testing. The State's response indicated that the following evidence was in the possession of the Dallas Police Department: a GSR kit, a gun box containing a gun and magazine, cartridges, fired cartridge cases and bullets, two sheets with blood, two shirts with blood, a towel with blood, and a brown hoodie jacket. There was no indication that biological material[2] had ever been collected from these items for testing or storage for later testing.

The trial court denied Rice's motion, finding that Rice failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. This appeal followed. *See id.* art. 64.05.

---

[2] "Biological material" is defined as "an item that is in possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing." CRIM. PROC. art. 64.01(a)(1).

–3–

**Chapter 64 Post-Conviction DNA Testing**

Under Chapter 64 of the Texas Code of Criminal Procedure, a convicted person may request the convicting court to order post-conviction DNA testing of evidence that was collected in relation to the offense and was in the State's possession during the trial of the offense but was not previously subjected to DNA testing.[3] *Id.* art. 64.01(a-1), (b)(1). To be entitled to such testing, the trial court must find that (1) the evidence still exists and is in a condition making DNA testing possible; (2) the evidence has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or materially altered; (3) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and (4) the perpetrator's identity was or is an issue in the case. *Id.* art. 64.03(a)(1); *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). The trial court must also find that the convicted person established by a preponderance of the evidence that (1) he would not have been convicted if exculpatory DNA test results had been obtained; and (2) he is not requesting the testing to unreasonably delay the execution of his sentence or the administration of justice. *See* CRIM. PROC. art. 64.03(a)(2); *Gutierrez*, 337 S.W.3d at 889.

We review a trial court's Chapter 64 rulings under a bifurcated standard. *Gutierrez*, 337 S.W.3d at 890. We afford almost total deference to the trial court's

---

[3] A convicted person may also request DNA testing of evidence that was previously subjected to DNA testing under limited circumstances. *See* CRIM. PROC. art. 64.01(b)(2).

findings of historical fact and application-of-law-to-fact issues that turn on the credibility and demeanor of the witnesses. *Id.* We consider all other application-of-law-to-fact questions de novo. *Id.*; *see also LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) ("[T]he ultimate question of whether a reasonable probability exists that exculpatory DNA tests would change the result on guilt-innocence is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed de novo.").

**The Trial Court Did Not Err in Denying Rice's Motion**

Although some of Rice's arguments are difficult to discern, Rice appears to challenge, through his first, second, third, fourth, fifth, and eighth points of error, the trial court's finding that he failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Specifically, in his fifth point of error, Rice contends identity was an issue because the police report describes another suspect wearing different clothing than Rice. He maintains that the DNA results would have shown there was another suspect, consistent with the police report. In his eighth point of error, Rice asserts that the trial court did not consider all the evidence before it, such as Romerros Jackson's interrogation, which shows that Jackson lied under oath at trial. Rice also asserts that, in this Court's opinion on direct appeal, we noted the time stamp of the surveillance video was actually one hour later than the time of the

shooting, which casts doubt on the evidence against him. *See Rice*, 2017 WL 359755, at *2 n.2.[4]

The only items Rice addresses in his brief as evidence that should have been tested are the "blooded sheets," "blooded clothes," "all the blood in the location of the scene of the crime," and "the 14 shell casings." The fourteen fired cartridge cases (shell casings) were recovered from the hotel room where the shooting occurred. However, the record indicates that the items with blood (two sheets, two shirts, and a towel) were collected from a different building near the hotel and that police never linked the bloody items to the shooting. There is also no indication in the record that the shooter was injured during the offense. Thus, on appeal, the only evidence Rice complains about that is related to the shooting is the fourteen fired cartridge cases. We will therefore limit our review of the trial court's denial of DNA testing to that evidence.

First, we note that no biological material has been identified on any of the fired cartridge cases. We will presume for purposes of this opinion, however, that skin tissue or cells could be recovered if the casings were swabbed. We must also presume that the proposed testing would produce exculpatory results meaning the results would exclude the movant as the donor of the biological material tested. *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017). However, if the results would

---

[4] We also noted that Detective Patricia Gamez, the lead investigator, "testified that, in her experience, video recorders do not always compensate for daylight savings time." 2017 WL 359755, at *2, *2 n.2.

"merely muddy the waters," the movant has not met his burden. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (quoting *Kutzner v. State*, 75 S.W.3d 427, 439, 439 n.27 (Tex. Crim. App. 2002) (quoting H. Research Org., Bill Analysis, Tex. S.B. 3 at 6, 77th Leg., R.S. (March 21, 2001) ("Senate Bill 3 meant to 'ensure that a favorable [DNA] test would show that an inmate is innocent, not merely muddy the waters in the case'") (brackets in *Kutzner*))). To determine whether the movant established by a preponderance of the evidence that he would not have been convicted if exculpatory DNA test results were obtained, we look to whether the exculpatory results "would alter the landscape if added to the mix of evidence that was available at the time of trial." *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014). We do not consider post-trial factual developments. *Reed*, 541 S.W.3d at 774; *Holberg*, 425 S.W.3d at 285.

The State argues that exculpatory DNA results would not establish that Rice was not the shooter, especially considering the substantial evidence presented at trial implicating Rice. We agree.

Here, presuming that DNA testing would reveal that Rice did not deposit biological material on the fired cartridge cases does not alter the landscape of the evidence presented at trial. *See Holberg*, 425 S.W.3d at 285, 287. As we summarized on direct appeal, multiple witnesses, including the two named victims, identified Rice as the shooter, and video surveillance recorded Rice running down the hall with a gun. *See Rice*, 2017 WL 359755, at *1. Several witnesses also

–7–

testified that Rice had been to the hotel earlier in the night and got in a fight with Murphy (the unindicted victim) about Murphy hanging out with Rice's girlfriend. Rice returned to fight Murphy, but Murphy did not come outside. Ultimately, Rice returned with a gun. Thus, regardless of whether his DNA is found to have been deposited on the fired cartridge cases, multiple witnesses who knew him identified him as the shooter and provided a possible motive for the shooting.

This Court's opinion in *Delarosa v. State*, affirming the trial court's order denying DNA testing of swabs from spent shell casings, a gun case, unspent bullets, and a handgun, is also instructive. *See* No. 05-18-00281-CR, 2018 WL 5961733, at *3–4 (Tex. App.—Dallas Nov. 14, 2018, no pet.) (mem. op., not designated for publication). Delarosa was convicted of two counts of aggravated assault/family violence and one count of aggravated assault, stemming from the shooting of three victims at Delarosa's home. *Id.* at *1. This court concluded that the absence of Delarosa's DNA on such items would not serve to exculpate him of the crime and that the presence of an unknown person's DNA on the items would not establish that Delarosa would not have been convicted by the jury. *Id.* at *3. "Such evidence, without information about how or when the DNA was deposited on the items, would only prove that some unknown person, at some unknown time, touched the gun, the bullets, and the gun case." *Id.*

Similarly, DNA test results showing a third-party's DNA to have been deposited on the evidence at issue here, does not determine the identity of the person

–8–

who committed the shooting and does not exculpate Rice; it merely muddies the water. *See Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) ("[I]f DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement of Article 64.03(a)(2)(A) has not been met."). Thus, we conclude that Rice did not prove by a preponderance of the evidence that he would not have been convicted if exculpatory DNA test results had been obtained. The trial court therefore did not err by denying Rice's motion for post-conviction DNA testing.

As to Rice's argument that the trial court did not consider all the evidence, such as information regarding an alternate suspect and Jackson's interrogation, we conclude there is no indication in the record that the trial court failed to consider the entirety of the evidence presented at trial or filed in conjunction with the DNA proceedings. Defense counsel questioned Jackson and police at trial about Jackson's interrogation and the lack of information he provided to police. Defense counsel further made clear in cross examination of the State's witnesses that Jackson's statement to police was inconsistent with his trial testimony and that, at one point, he was considered a suspect. However, Jackson's statement was not admitted at trial and is not part of the DNA record. Therefore, to the extent Rice complains about Jackson's interrogation itself, it was not before the trial court to consider when ruling on Rice's DNA motion.

We overrule Rice's first, second, third, fourth, fifth, and eighth points of error.

**Ineffective Assistance of Counsel**

In his sixth and seventh points of error, Rice complains that his trial and DNA counsel were ineffective. We dismiss Rice's sixth point of error and overrule his seventh.

An appeal under article 64.05 is limited to a review of the trial court's rulings in the post-conviction DNA proceedings. *Lising v. State*, Nos. 05-03-01605-CR, 05-03-01606-CR, 2005 WL 341586, at *2 (Tex. App.—Dallas Feb. 14, 2005, no pet.) (not designated for publication). "Chapter 64 does not confer jurisdiction upon this Court to entertain collateral attacks on the trial court's judgment or to revisit matters, such as a complaint about ineffective assistance of counsel, that should have been raised on direct appeal." *Id.* Therefore, to the extent Rice's sixth point of error complains that his trial counsel was ineffective for failing to secure DNA testing prior to trial in 2015, we do not have jurisdiction to consider it, and it is dismissed.

Additionally, although there is a limited statutory right to counsel in post-conviction DNA proceedings, *see* CRIM. PROC. art. 64.01(c), there is no federal or state constitutional right to counsel under Chapter 64. *Winters v. Presiding J. of Crim. Dist. Ct. No. 3 of Tarrant Cty.*, 118 S.W.3d 773, 774 (Tex. Crim. App. 2003) (orig. proceeding). This Court has concluded that, because there is no constitutional right to counsel in a Chapter 64 proceeding, there is no constitutional right to the effective assistance of counsel in such a proceeding. *Hughes v. State*, 135 S.W.3d 926, 928 (Tex. App.—Dallas 2004, pet. ref'd); *Dixon v. State*, 242 S.W.3d 929, 933

–10–

(Tex. App.—Dallas 2008, no pet.) (quoting *Hughes* and concluding appellant could not raise ineffective assistance of counsel claim in Chapter 64 appeal); *see also Gutierrez*, 337 S.W.3d at 889, 892 ("[t]here is no free-standing due-process right to DNA testing"; "a person's effort to secure testing under Chapter 64 does not involve any constitutional considerations").  Therefore, we decline to address the merits of Rice's seventh point of error, and it is overruled.

## Conclusion

We dismiss Rice's sixth point of error for want of jurisdiction, overrule Rice's remaining seven points of error, and affirm the trial court's order denying post-conviction DNA testing.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220135F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REGINALD DONELL RICE,
Appellant

No. 05-22-00135-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F14-76788-R.
Opinion delivered by Justice Smith.
Chief Justice Burns and Justice
Nowell participating.


Based on the Court's opinion of this date, the order of the trial court denying post-conviction DNA testing is **AFFIRMED**.


Judgment entered this 9th day of January 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REGINALD DONELL RICE,
Appellant

No. 05-22-00136-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F14-76789-R.
Opinion delivered by Justice Smith.
Chief Justice Burns and Justice
Nowell participating.

Based on the Court's opinion of this date, the order of the trial court denying post-conviction DNA testing is **AFFIRMED**.

Judgment entered this 9th day of January 2023.